STACY & RUSHER *v.* STATE.

4884                                      306 S. W. 2d 852

Opinion delivered November 18, 1957.

*Gene Coffelt, Claude Duty* and *Jeff Duty,* for appellant.

*Bruce Bennett,* Atty. General, and *Thorp Thomas,* Asst. Atty. General, for appellee.

MINOR W. MILLWEE, Associate Justice. The defendants, Alvin Stacy and Elmer Rusher, were jointly charged, tried and convicted of the crime of involuntary manslaughter in the killing of W. L. Miser on January 9, 1957. Punishment was fixed by the jury at three years in the penitentiary with a recommendation that the sentences be' suspended. The trial court suspended two years of Stacy's sentence and one year of Rusher's sentence and entered judgment accordingly. Both have appealed.

Defendants first challenge the sufficiency of the evidence to support the verdict and judgment. We briefly review it in the light most favorable to the State, as we must, in determining this issue. The killing of W. L. Miser arose out of a collision which occurred on Highway 12 about 2 1/2 miles east of Rogers, Arkansas, between a pick-up truck driven by Miser and a loaded log truck belonging to the defendant, Elmer Rusher, and being operated by the defendant, Alvin Stacy.

On the morning of January 9, 1957, Rusher drove to his sawmill near Rogers with Gene Bond, an employee. While they were preparing for the day's operations Alvin Stacy, another employee who lived near the mill, came and borrowed Rusher's chain saw and truck to use in cutting and hauling some firewood for his own use. Stacy returned to the mill later in the morning. Rusher had a pint of liquor which he and Stacy proceeded to drink. Rusher then sent Stacy and Bond to a tract of timber to cut logs where they arrived about 1:00 p. m. Rusher followed later in his car. Young Bond considered Stacy too drunk to drive and admonished him about his fast driving on the way to the log woods. While they were cutting the logs Stacy was so intoxicated that he fell with the chain saw two or three times.

Rusher left the log woods about 2:00 p. m. for the Missouri state line where he purchased a half pint of liquor and several cans of beer. Upon his return to the log woods he gave Stacy the liquor and drank some of the beer himself. The three men then loaded the logs on the truck. Bond suggested that Rusher let him drive the log truck to the sawmill but Stacy was directed to do so. Rusher and Bond followed in Rusher's car with Bond driving. As they followed close behind the truck on a dirt road to Highway 12 Bond warned Rusher that Stacy was driving "a little too fast" but Rusher replied that Stacy was a good driver and "would make it all right." After they reached Highway 12 Stacy proceeded to drive fast on curves and on the wrong side of the road at times with one of the logs protruding several feet from the left side of the truck. While driving in this manner about 5 p. m. with Rusher and Bond about two car lengths behind, the log truck met the pick-up truck driven by Miser who drove partly on the right shoulder of the road in an effort to avoid a collision. The protruding log struck and demolished the cab of the pickup, striking Miser in the face and killing him instantly. Neither Stacy nor the other two men stopped after the collision although Bond suggested they do so. Stacy was still intoxicated when he and Rusher were taken into custody that night.

The foregoing proof was clearly sufficient to sustain the verdict against Stacy. But Rusher earnestly insists that a verdict should have been directed in his favor since he was neither in actual control of the log truck nor riding in it with Stacy at the time of the collision. He contends the owner of a vehicle being driven by another cannot be convicted as an accessory to manslaughter unless he is present in the vehicle at the time the offense is committed. In *Fitzhugh* v. *State,* 207 Ark. 117, 179 S. W. 2d 173, we approved this statement from 26 Am. Jur., Homicide, Sec. 59: ''Manslaughter may result from the doing of an unlawful act or as the result of gross negligence in the performance of an act otherwise lawful, consequently, one who procures another to use a dangerous agency which causes death may be guilty as accessory before the fact.'' Also in *Lewis and Wren* v. *State,* 220 Ark. 914, 251 S. W. 2d 490, we said: ''It is true that the authorities are divided on the question as to whether there can be an accessory before the fact to manslaughter, some courts holding that there cannot be accessories before the fact to voluntary manslaughter while there can be such accessories in cases of involuntary manslaughter. 40 C. J. S., Homicide § 9 b. We think the rule adopted in the *Fitzhugh* case is supported by reason and the weight of authority.''

In the last case cited we also approved the following statement by the Nevada Court in *Ex parte Liotard,* 47 Nev. 169, 217 P. 960, 30 A. L. R. 63, where the killing occurred while the defendant-owner was riding on the running board of the car being driven by his drunken co-defendant: ''No one would contend that the owner of a car would not be liable for injuries resulting from his operating it while intoxicated. How, then, can he escape the consequence when he sits by and permits another, who is intoxicated, to operate it? . . . One who is so careless of the rights of others as to use a dangerous instrumentality while incapacitated by drink, or who permits others to do so, as here shown, invites the consequences. He must pay the penalty.''

It is true that the owner was either riding in or upon the vehicle at the time of the offense in these cases. But

we are unwilling to say this is an absolute prerequisite to his conviction as an accessory to the crime of involuntary manslaughter. Here the jury were warranted in finding that Stacy was acting under the direction and control of Rusher who was riding immediately behind the truck with full knowledge of, and acquiescence in, Stacy's wanton negligence and intoxicated condition, and the tragic results likely to flow therefrom. In other situations where an owner engages with another in an activity in a reckless and wanton disregard for the safety of others, he has been held guilty of involuntary manslaughter, if the death of another is caused thereby, even though he is not actually present when the homicide occurs. See cases cited in *State* v. *DiLorenzo,* 138 Conn. 281, 83 A. 2d 479. We hold the evidence presented on behalf of the State sufficient to sustain the verdict against both defendants.

Defendants next say the court erred in admitting the testimony of David Creekmore and Howard Montgomery who testified they met a green Ford truck similar to Rusher's with a loose log protruding therefrom near the scene of the collision shortly before it happened. The grounds of objection were that this testimony tended to impeach that of another witness for the State and did not properly identify the truck as the one driven by Stacy. While the witnesses could not identify the driver of the truck we think the testimony was competent to consider along with all the other circumstances in determining guilt or innocence; and the mere fact that it conflicted with that of some other State witness did not render it incompetent.

It was shown that defendant Stacy consented to the making of a drunkometer or intoximeter test of his breath about three hours after the collision. Defendants make several objections to the court's admission of the results of this test which were not urged below and may not be raised for the first time on appeal. Such tests have met with general judicial approval in recent years upon the issue of intoxication subject to certain conditions such as the proper tracing and identification of the specimen, accuracy of administration and analysis, qual-

ification of the witness and relevancy in point of time. Wharton's Criminal Evidence Sec. 664; Underhill's Criminal Evidence (Fifth Edition), Sec. 152; 159 A. L. R. 210. There is an excellent comment on the subject in 6 Ark. Law Review 186.

The only specific objection urged at the trial was that the drunkometer test was made too long after the collision. We readily agree that the results of a test taken three hours after the collision would ordinarily be of little, if any, probative value as to the defendant's state of intoxication when the collision occurred. But there was further proof to the effect that Stacy did no further drinking during the three-hour interval. In these circumstances we cannot say the test was so remote in time as to render the testimony inadmissible. Nor do we agree with the State's contention that an erroneous admission of such evidence would not be prejudicial here because the fact of Stacy's intoxication was established by other proof; at least unless such other proof is undisputed, and that is not the situation here.

Defendant Rusher made proper objections to the testimony of State Policeman Clinton to the effect that on the day following the collision Stacy told him, in Rusher's absence, that he did not eat any lunch on the day of the accident and that he did not consume any intoxicants on that day after the wreck. The court held such testimony admissible against Rusher for all purposes except the question whether he was under the influence of liquor or not. This evidence was clearly competent as an admission against Stacy, who testified that he ate lunch on the day of the collision and took a drink of liquor in the afternoon thereafter. Of course the state of Stacy's intoxication at the time of the killing was a vital issue in the case and had a direct bearing on the question of the guilt or innocence of both defendants. It is settled by our decisions that, where a criminal deed is done and the criminal enterprise is ended, the acts and declarations of one conspirator or joint actor in the crime cannot be used as evidence against a co-conspirator or co-actor. *Counts* v. *State,* 120 Ark. 462, 179 S. W. 662; *Hammond* v. *State,* 173 Ark. 674, 293 S. W.

714. While it might be said that no actual conspiracy was involved here, the defendants were charged and convicted as co-actors in the commission of the offense. Even if they were neither co-conspirators nor co-actors this testimony would be incompetent as mere hearsay against the defendant Rusher. As to him, the admission of the evidence constituted reversible error.

We find no prejudicial error in the other assignments of error presented. The judgment against Alvin Stacy is, therefore, affirmed. For the error indicated, the judgment against Elmer Rusher is reversed, and the cause remanded for a new trial.