**COMMONWEALTH of Kentucky, DEPART-
MENT OF PUBLIC SAFE-
TY, Appellant,**

**v.**

**James William BRENT, Appellee.**

Court of Appeals of Kentucky.

March 27, 1970.

Rehearing Denied May 15, 1970.

Mary Jo Arterberry, Dept. of Public Safety, Frankfort, for appellant.

J. F. Thomas, New Castle, for appellee.

DAVIS, Commissioner.

The Department of Public Safety revoked the operator's license of appellee for six months for his alleged refusal to submit to a chemical test to determine the alcoholic content of his blood. KRS 186.-565. The revocation was based on an affidavit furnished the Department by State Police Trooper Childers. KRS 186.-565(3). Appellee sought and was granted an administrative hearing, after which the order of revocation was sustained. KRS 186.565(4). Appellee obtained judicial review as prescribed by KRS 186.565(5), and the circuit court overturned the Department's order of revocation on the ground that the Department's finding that appellee refused the test was not supported by "sufficient substantial evidence." The Department has appealed that ruling.

It appears that appellee was involved in a two-car accident on November 7, 1968, on U. S. Highway 42, about three miles west of Sligo. The adverse driver was Paul Kunze. The accident occurred at some unspecified time prior to 6 p. m.

State Police Trooper Howard (not the officer who forwarded the affidavit to the Department pursuant to KRS 186.565(3)) was called to the scene, arriving there at some time not shown by the transcript. Since the site was outside the territory assigned to Trooper Howard, he summoned Trooper Childers, who first arrived about 6 p. m. Trooper Childers did not know or undertake to say how much time had elapsed between the time of the accident and his arrival.

■ Since Trooper Howard had not observed appellee driving a car, he issued a citation charging him with being drunk in a public place. However, Kunze proceeded to LaGrange and made affidavit before the Oldham County judge charging appellee with operating a motor vehicle while under the influence of intoxicating liquor, as denounced by KRS 189.520. A warrant was duly issued by the judge, based on Kunze's affidavit. Trooper

Childers, who had brought appellee to LaGrange from the accident scene (some ten miles away), served the warrant on appellee and requested him to submit to the chemical test for alcoholic content of blood, as prescribed in KRS 186.565. Appellee at first indicated that he would submit to the test, but then refused it. Trooper Childers testified that it was "approximately an hour and a half, maybe a little more" from the estimated time of the accident until he requested appellee to submit to the test. As noted, the Department revoked appellee's operator's license for six months upon its receipt of the sworn statement of Trooper Childers.

Appellee did not testify at the administrative hearing. Officer Childers related that appellee based his refusal to submit to the test on the ground that he "wasn't going to be treated like a criminal."

There was substantial evidence that appellee refused to submit to the test—in fact, there was no evidence to the contrary. The circuit court's finding to the contrary cannot be sustained unless it may be said, as a matter of law, that appellee had a valid legal reason to refuse the test. The only reason advanced by appellee is the lapse of time between the incident of driving a motor vehicle and the request for submission to the test.

In 34 Ky. Law Journal, 250 et seq. (May 1946), appears an extensive article by Dr. Henry W. Newman entitled "Proof of Alcoholic Intoxication." The article points out that "Blood is without a doubt the material of choice for alcohol analysis." (Op. Cit., p. 265).

In McCormick on Evidence, Section 176, pages 375–377, appears a treatment of the acceptance by the courts of chemical tests as proof of intoxication. McCormick notes:

"This is a field where the courts, despite formidable conflicts in expert opinion, have been persuaded rather quickly to use the results of scientific experimentation." Id. at page 375.

In Toms v. State, 95 Okl.Cr. 60, 239 P.2d 812 (1952), the defendant was charged with driving an automobile while drunk. He was involved in an accident at 3:30 p. m. At 5 p. m., an hour and a half later, he voluntarily submitted to a "Harger Breathometer" or "drunkometer" test. The defendant contended that the results of the test should have been excluded, because the test was too remote in point of time to show alcoholic blood content at the time of the collision. In rejecting that contention, the Criminal Court of Appeals of Oklahoma noted in part:

"This contention appears to us to be without merit on its face particularly in view of the evidence that the defendant offered no proof in support of the contention and, further in view of the fact that Dr. Beddo testified a human body will burn about $\frac{1}{3}$ of an ounce of alcohol an hour, or about .015% of blood alcohol per hour'. Dr. Beddo's conclusion that the test being made at 5:00 P.M., and the defendant not having taken any alcohol from the time of the collision at 3:30 P.M., and the time the tests were made that the defendant would be more drunk at 3:30 P.M., than he was at 5:00 P.M., and no doubt this fact formed the basis for Dr. Beddo's conclusion. This seems sound to us. Such being true, the longer the test was delayed the more favorable the situation would become for the subject. We believe this conclusion would be obvious." Id. 239 P.2d at 820.

We regard the reasoning of the Oklahoma court as sound, at least as it pertains to the facts of the case at bar. We think a different result might well obtain if a subject refused a test requested a week or a month after the event, but that is not this case. The appellee did not offer proof that he had imbibed any alcoholic beverage after the driving incident. He asks the court to take cognizance that such might be the case; hence, the test would have been

inaccurate. It seems to us that he should have predicated refusal of the test on that ground, if there were such a ground. If the officer insisted on the test anyway, the appellee could have challenged its admissibility and its accuracy when and if it was offered in proof against him. However, the bare chance that intervening events may have affected the accuracy of the test, without any claim that any such thing happened, was no legal excuse for refusing the test in the present case. Cf. Stacy v. State, 228 Ark. 260, 306 S.W.2d 852 (1957), (test three hours later). See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.

We observe that appellee has presented no challenge to the constitutionality of KRS 186.565. We do not express any opinion in that respect.

The judgment is reversed with directions to enter a new judgment sustaining the order of the Department of Public Safety.

All concur.

OSBORNE, Judge (concurring).

The implied consent statute (KRS 185.-565) was enacted to control the high-risk drinking driver with the objective of reducing death and destruction on the highways. Without question, the scientific community has produced numerous studies which display "the deleterious effects of alcohol consumption on a driver's ability to perform driving tasks and demonstrating quantitatively the association of drinking drivers with accidents." 54 A.B.A. 555, 1968.) Techniques were developed to determine blood-alcohol levels by chemical tests. The problem then was to assure that this data could be obtained by removing blood from the accused and introducing it as evidence in court. To assure use of this scientific technique our legislature enacted "implied consent" legislation. In general, these laws provide that anyone possessing a license and operating a vehicle on the state highway has given his consent to being tested for blood alcohol content should he ever be arrested for drunk driving. If the arrested driver refuses, a report of his refusal is made to the state licensing agency and his license may be suspended or revoked. Thus, implied consent, in essence, provides the state with a means of compelling submission to a blood-alcohol test.

This compulsion provides the opposite end of the equation. On one side we see the necessity of alleviating the hazardous problem of drunk drivers, and on the other is the invasion, or better yet, the evasion of our personal liberties by the state compelling a citizen to submit to a blood-alcohol test.

Loss of an operator's license through suspension or revocation for operating a vehicle while intoxicated was possible prior to (and after) the implied consent law. With the enactment of the implied consent law, a new method of revocation was established—*revocation for refusal* to submit to the chemical test. This punishment is not based upon any adjudication of guilt, but simply upon the refusal to comply with the "request." I am not convinced that "request" is a suitable word, although it is used throughout the statute, when, in actuality, it is an ultimatum or order.

Although the constitutionality and morality of the implied consent law is not argued, I harbor serious doubts. Although the United States Supreme Court has not passed on all aspects of it, it did in Schmerber v. Calif., 384 U.S. 757, 86 S.Ct. 1826 (1966), approve the concept of requiring motorists arrested for driving while intoxicated to submit to blood tests for the purpose of producing evidence of intoxication. Writing for the five-man majority in *Schmerber*, supra, Justice Brennan stated:

"We thus conclude that the present record shows no violation of petitioner's right under the Fourth and Fourteenth amendments to be free of unreasonable searches and seizures. It bears repeat-

ing, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's reason is a cherished value of our society * * *."

I heartily agree with the dissent in *Schmerber* as it is stated:

"In the first place it seems to me that the compulsory extraction of petitioner's blood for analysis so that the person who analyzed it could give evidence to convict him had both a 'testimonial' and 'communicative nature.' * * * the analysis of the blood was to supply information to enable a witness to communicate to the court and jury that petitioner was more or less drunk. * * * It concedes (the majority), as it must so long as Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 stands, that the Fifth Amendment bars a state from compelling a person to produce papers that might tend to incriminate him. It is a strange hierarchy of values that allows a state to extract a human being's blood to convict him of a crime because of the blood's content but proscribes compelled production of his lifeless papers * * *."

It is my earnest belief that the privilege a citizen has against being compelled to give evidence which is self incriminating is a cherished cornerstone giving support to our personal liberties.

"To compel a person to submit to testing * * * in which an effort will be made to determine his guilt or innocence on the basis of physiological responses, whether willed or not, is to evoke the spirit and history of the Fifth Amendment. Such situations call to mind the principle that the protection of the privilege 'is as broad as the mischief against which it seeks to guard.' Counselman v. Hitchcock, 142 U.S. 547, 562, 12 S.Ct. 195, 198, 35 L.Ed. 1110, 1114, as cited in Schmerber v. Calif., 384 U.S. 757, 16 L. Ed.2d 908, 86 S.Ct. 1826."

I regretfully have to concur with the majority that the finding of the circuit court is clearly erroneous within the meaning of CR 52.01, as it is contrary to the evidence presented. I also, with regret, must agree that under the present statute a driver's license can be suspended pursuant to the possession of a valid warrant, regardless of the time that has expired since the warrant was issued. An examination of the transcript shows the weightlessness of the circuit court's finding that "there is not sufficient evidence in this record to support the finding that said appellant (appellee herein) refused to subject himself to such test."

Regretfully, I must concur with the result reached today under the facts and arguments waged in the instant case. I cannot reiterate strongly enough, however, that I concur because the constitutional argument was not presented.