ROBERTSON *v.* STATE.*

(Division A. April 8, 1928.)

[121 So. 492. No. 27893.]

---

*Corpus Juris-Cyc References: Homicide, 29CJ, section 141, p. 1154, n. 96; section 142, p. 1156, n. 19; 30CJ, section 588, p. 334, n. 53; section 643, p. 399, n. 47; As to effect of unintentional discharge of firearm on degree of homicide, see annotation in 5 A. L. R. 610; 23 A. L. R. 1556; 13 R. C. L. 858, 860; 7 R. C. L. 435.

*S. E. Turner* and *E. V. Hughston,* for appellant.

*J. A. Lauderdale,* Assistant Attorney-General, for the state.

McGOWEN, J. Appellant was tried upon an indictment charging him with murder in killing Ocie Robertson on the fifth of August, 1927. On the trial he was convicted of manslaughter, and sentenced to serve a term of ten years in the state penitentiary.

The homicide occurred at the home of the appellant. Louis Phillips and Lester Robertson testified to the effect that a company of men were in the appellant's home, and that they were scuffling in the hallway, when Ocie scratched appellant on the cheek. Appellant tried to catch Ocie, and, failing to do so, asked Phillips and Carpenter to catch him. A few minutes thereafter appellant, Phillips, and the deceased were in a room together. The appellant secured his pistol, and said he had been itching to shoot Phillips and the deceased, Ocie Robertson; he drew the pistol and pointed it at the witness Phillips, who ran from the room. Immediately the pistol was fired, Phillips returned to the room and found Ocie dead, with a pistol ball in his head, while the appellant was standing there with the pistol in his hand. No one else was in the room at the time the pistol was discharged.

Another witness for the state testified that the deceased told him that they had been scuffling and playing, and in some way Ocie scratched appellant; that they got to scuffling in the room where Ocie was; that appellant's pistol was hanging on the wall; and that the latter secured it, whereupon Phillips ran from the room and pulled the door shut behind him. Then the appellant pointed the pistol at Ocie, and in some way it was fired,

killing the latter, who was a nephew. The evidence of the defendant and his witnesses was to the effect that the pistol was discharged in a scuffle over it, killing deceased.

We are asked to reverse the case because of an instruction granted for the state, and an instruction requested on behalf of defendant which was refused. The two, taken together, raise the same question presented here for decision. The instruction granted for the state is as follows: "The court charges the jury for the state that the involuntary killing of a human being by another person is manslaughter when done by the culpable negligence of such other person without authority of law, and if you believe from all of the evidence in this case beyond a reasonable doubt that the defendant feloniously pointed and aimed a loaded pistol at and towards the deceased, Ocie Robertson, and discharged the same by an act of culpable negligence on the part of the said defendant, and that the said Ocie Robertson was shot and killed as result thereof and without the authority of law, then you will find the defendant guilty of manslaughter."

The following instruction was requested by the defendant and refused by the court: "The court instructs the jury that in this case they cannot convict the defendant of manslaughter. The jury must either convict him of murder, or acquit."

Of course, the instruction requested by the defendant, appellant here, was properly refused, if the court did not commit error in granting the instruction on manslaughter on the theory of culpable negligence.

Section 1023, Hemingway's Code of 1927 (section 1244, Code of 1906), is in this language: *"Homicide—All Other Killings.*—Every other killing of a human being, by the act, procurement, or culpable negligence of

another, and without authority of law, not provided for in this chapter, shall be manslaughter."

Counsel for appellant contends, because section 809, Hemingway's Code of 1927 (section 1045, Code of 1906), specially denounces the intentional pointing or aiming of a gun at or toward another human being, except in self-defense, etc., and says one who shall discharge such firearms shall be guilty of crime, that the facts of this case fall squarely within this latter section, and therefore defendant cannot be guilty of manslaughter.

We do not think there is any merit in this contention. It is hard to conceive of a clearer cut demonstration of what is termed "culpable negligence" than for a person to point, aim, and discharge a loaded pistol at another; and, where this negligence results in the death of the human being at whom the pistol is pointed, the crime of manslaughter is completely made out and established.

In *Gregory* v. *State,* 118 So. 906, we permitted the conviction of Gregory to stand; this being a case where Gregory, the husband, handed Mrs. Gregory, his wife, a pistol without first seeing that it was incapable of doing her harm at a time when she was threatening to kill herself, and, when the pistol snapped once, invited her to shoot herself by saying, "You can't kill yourself with an empty gun;" thereupon she pulled the trigger again, and was killed. It was as if Gregory had pulled the trigger that discharged the bullet into the form of his wife.

The only difference in the two cases is that Gregory aided, abetted, counseled, and advised his wife to aim the pistol, while in this case the court told the jury that, if appellant discharged the pistol, etc., by pointing and aiming, the jury must find that the act was one of culpable negligence. The principle applicable to the two cases is exactly the same.

In the case of *Sims* v. *State,* 149 Miss. 171, 115 So. 217, this court said: "Culpable negligence must be ascertained from the facts of each case, and no ironclad statement can be set forth as applicable to all classes of cases."

And in both the *Sims* and the *Gregory cases, supra,* the following definition of "culpable negligence" is approved: "The omission to do something which a reasonable, prudent, and honest man would do, or the doing of something which such a man would not do, under the circumstances surrounding the particular case."

While it is true that the defendant might have been indicted for the statutory crime of pointing or aiming a pistol, it is also true that, if the facts and circumstances constitute culpable negligence, and the negligent act results in the death of a human being, he may also, upon an indictment for murder, be convicted of manslaughter under the statute which was quoted above.

If the pointing of a loaded pistol at a human being is not culpable negligence, under the above definition, then it would be difficult for the mind of mortal man to conceive of stronger facts which would constitute such negligence.

We think the instruction was properly given, and the quoted instruction for defendant, refused by the court, should not have been granted. We find no reversible error in this case.

*Affirmed.*