DOWNS *v.* STATE

In Banc. June 13, 1949.

(41 So. (2d) 19)

832

Crawley & Ford, for appellant.

George H. Ethridge, Assistant Attorney General, for appellee.

Hall, J.

This appeal is prosecuted from a conviction of manslaughter and a sentence of six years in the state penitentiary because of the alleged culpable negligence of appellant in the operation of his automobile as a result of which Richard Neil Stokes, a child nearly nine years of age, lost his life when he and the bicycle upon which he was riding were struck by appellant's automobile on State Highway No. 42, about one and one-half miles in an easterly direction from the City of Kosciusko.

The evidence disclosed that appellant was driving east upon the highway at a speed of 50 to 60 miles an hour. He was following another car going in the same direction at about the same rate of speed. The deceased was riding his bicycle in the same direction. A black automobile came over a hill traveling in the opposite direction at a rate of speed estimated by one state witness at 100 miles an hour, by another "at an awful rate of speed", and by another "at a terrific speed". The only eye-witness offered by the State said that his attention was first

attracted to the highway by the black car traveling west and he looked and saw it meeting appellant's car, and saw the child on the bicycle go between the two cars as they were meeting; that appellant was "blocked" by the black car so that he could not pass to the left side of the child; and that appellant applied his brakes and swerved to the right and went off onto the south shoulder of the road and then swerved back to the left and came into the paved portion of the highway and struck the bicycle and continued on across the north side of the road, ran down an embankment and turned over. The bicycle and the child were knocked off the highway and down the embankment on the north side, and the child received injuries from which it died several hours later. Three other witnesses were offered by the prosecution who were at a roadside cafe in proximity to the accident, all of whom heard the noise and looked in time to see appellant's car going over the embankment on the north side of the highway. None of them saw the child or the bicycle until they went to the scene.

A city policman arrived soon after the accident and testified that he saw skid marks of two wheels on the pavement, indicating that appellant's brakes were holding, and that these marks led off the pavement to the south or right side of the road and then came back upon the pavement and went across it to the north side at an angle of about 45 degrees. A state highway patrolman arrived later and he examined the highway and testified that he found only one skid mark, as if only one wheel was skidded by the brakes, and that this lone skid mark did not go off the pavement to the right or south but made a kind of semicircle to the north side. He also testified that he found signs in about the center, or slightly south of the center, of the paved portion of the highway which indicated that this was the point of impact between the automobile and the bicycle. There was also testimony from some of the state witnesses that they smelled some kind of intoxicant on appellant's breath after the acci-

dent, but not one of them would say that he was drunk. One of the state witnesses had been riding in the car with appellant a little earlier in the afternoon and testified that he smelled liquor on appellant's breath but that he was driving with care and caution on his side of the road and was not drunk.

Several photographs were made of appellant's automobile after the accident and these all show that the bicycle was not struck by the front of the car and that the first contact between the car and the bicycle was made at approximately the center of the door of the car on the left side. The door handle caught in the clothing of deceased and was broken off, and a severe wound upon his body was probably inflicted by the handle.

The state witnesses who came immediately to the scene testified that appellant himself was injured, and some of them said that at first he appeared to be "knocked out", but none of them said that this appearance was the result of intoxication.

There is considerable discrepancy in the testimony of the state witnesses as to exactly what appellant said regarding the accident. Some said that he denied striking the bicycle; some quoted him as saying that the black car traveling west caused the accident; some quoted him as saying that he knew that he got the front of his car by the bicycle and hoped that the side of the car cleared it. The foregoing are the principal facts proven by the State and constitute all of the evidence which in any manner tends to establish negligence on the part of the appellant.

Appellant offered one eye-witness who testified that the deceased was riding east on his bicycle in about the middle of the paved portion of the highway, and when the fast car came over the hill the child "ducked" or turned sharply to the right, and that appellant immediately swerved to the right and off the pavement onto the shoulder of the road and almost turned over, and then apparently lost control of his car and it ran back

into and across the pavement and turned over down the embankment on the left or north side. There is no material conflict between this witness and the eye-witness for the State. Another witness for appellant testified that he had been in the automobile with him that afternoon and smelled intoxicating liquor on appellant's breath, but that appellant was definitely not drunk or under the influence of liquor, and was driving carefully, and talking normally and with good sense.

Appellant testified that as he approached the scene of the accident he was driving at about 55 miles an hour, that the fast moving car came over the hill at around 100 miles an hour and that the deceased "all at once . . . switched from the north lane over to the south lane, and I hit my brakes and pulled my car to the right, locked my wheels,—had good brakes,—and as I did my car went out of control, almost turned over in the fill on the south side of the highway, I lost all control of it and I knew that the front end of my automobile did not touch that bicycle, but as it went back across the road,—after looking at the picture,—the side of the car must have scraped the bicycle, and I went on off the road and turned over and got a cut place on my arm and almost broke my neck." He testified, without dispute, that his head struck the top of the car with sufficient force to break the cloth lining, that he was almost knocked out and was naturally excited. He further testified, without dispute, that he was driving along the south lane of the highway. He admitted that earlier in the afternoon he and another man had drunk some whiskey, but he said that he was not drunk, was in full possession of his faculties, and did everything within his power to avoid striking the child.

The appellant requested a peremptory instruction at the close of the evidence, which was refused, and this action of the trial court is assigned as error.

There is not a member of this Court who has any patience whatever with or sympathy for a drunken driver, but there is no evidence here from which a jury

could possibly find that appellant was drunk at the time of this tragic accident or that he was incapable of operating his automobile in a safe and careful manner. Neither is there one word of evidence here from which it can be inferred that appellant was guilty of any culpable negligence. The prosecution did not show any causal connection between the appellant's having had a drink of liquor and the unfortunate accident. It is exceedingly doubtful in the minds of some of the members of the Court whether the facts here disclosed are sufficient to make out a case of simple negligence which would justify an award of damages in a civil action where such negligence must be shown only by a preponderance of the evidence, and ██ we are of the unanimous opinion that the State did not meet the burden of showing beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis that the appellant was guilty of such culpable negligence as to justify a conviction of manslaughter.

The prosecution did not offer one word of evidence from which it could be inferred that appellant was guilty of culpable negligence of any character in the operation of his automobile. According to the record before us, he was driving the car in a prudent and proper manner, free of recklessness prior to the accident, and when confronted with the emergency created by the oncoming automobile and the presence of the deceased in about the center of the highway and the sudden darting of the deceased toward the right lane of traffic, appellant immediately swerved his car to the right onto the shoulder of the highway and made every reasonable effort to avoid striking the deceased, even to the extent of wrecking his automobile.

In Scott v. State, 183 Miss. 788, 185 So. 195, 196, where the defendant turned a corner so fast that his automobile ran upon a sidewalk and killed a pedestrian, a conviction of manslaughter was reversed and the appellant discharged, and this Court there said "In Shows v. State,

175 Miss. 604, 168 So. 862, we held that culpable negligence within the meaning of the statute is that degree of negligence or carelessness which is denominated as gross negligence and which constitutes such a departure from what would be the conduct of an ordinarily careful and prudent man under the same circumstances as to furnish evidence of indifference to consequences,'' citing Sims v. State, 149 Miss. 171, 115 So. 217; Gregory v. State, 152 Miss. 133, 118 So. 906; and Robertson v. State, 153 Miss. 770, 121 So. 492.

In the more recent case of Smith v. State, 197 Miss. 802, 20 So. (2d) 701, 706, 161 A. L. R. 1, this Court reviewed numerous authorities on the subject and announced this rule to which we adhere. ''In order then to give the term culpable negligence in the statute its proper setting instead of harking back to gross negligence, the term culpable negligence should be construed to mean a negligence of a higher degree than that which in civil cases is held to be gross negligence, and must be a negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life, and that this shall be so clearly evidenced as to place it beyond every reasonable doubt.''

 Applying the stated principles to the case at bar we can find no facts in evidence to sustain the action of the trial court in submitting to a jury the question of appellant's guilt of culpable negligence, and, consequently, the judgment of convition and sentence must be reversed and the appellant discharged.

Reversed, and appellant discharged.