## HATHORN *v.* STATE

No. 39690        October 10, 1955        82 So. 2d 653

*J. O. Hollis,* Carthage; *W. W. Pierce,* Jackson, for appellant.

*Joe T. Patterson, Asst. Atty. Gen.,* Jackson, for appellee.

LEE, J.

From a manslaughter conviction on account of the killing, through culpable negligence, of Wyvone Fowler, a fourteen year old girl, with a sentence of eleven years in the state penitentiary, Perry Hathorn appealed.

About 5:30 on Sunday afternoon, September 26, 1954, a Ford automobile, driven by the defendant, collided with a Chevrolet automobile, driven by Willis Ivy, on a paved highway between DeKalb and Preston in Kemper County. The Ford was proceeding south and had just gone around a sharp curve. The Chevrolet was traveling north. Wyvone Fowler was in the Chevrolet, and, as a result of the collision was horribly injured. An arm was torn off, her skull was crushed, her neck was broken, and she died a few minutes later.

Willis Ivy testified in effect that the Ford came around the sharp curve, on the wrong side of the road, at a terrific rate of speed, estimated by him to be ninety miles an hour; that it slid onto and along the graveled shoulder, and then headed directly toward his car; that in an effort to avoid being struck, he turned his Chevrolet to the left; but that the Ford turned to its right and came directly into the front and right side of his car. Mrs. John Ivy, who lived only 200 yards north of the scene of the collision, saw the Ford pass her house at a speed which she also estimated to be 90 miles per hour. In a matter

of seconds she heard an awful collision and ran immediately to the place. B. S. Hood, a highway patrolman, in the discharge of duty went to the scene of the collision and observed the condition of the road and ground before the cars were moved. He traced skid marks which were left by the Ford. Such marks began on the pavement and continued for 205 feet. They then left the pavement on the east side and continued off the pavement for a distance of 138 feet. They then went back onto the pavement and continued for a distance of 49 feet to the point of impact between the cars. The Ford then skidded 55½ feet from the point of impact before it stopped. Its motor was out of the car about 32 feet away.

Kenneth Palmer and Richard McBrayer testified that they saw the Ford, driven by the defendant, about 2½ or 3 miles from where the accident occurred; that, at that time, it was going from one side of the road to the other and ran into a ditch; and that when they asked Hathorn what he had been drinking, he said a couple of beers or cans of beer.

The defendant testified that, while he was approaching the curve, he saw a cow on his side of the road; that he pulled to his left in order to miss the cow; that he then turned back toward his right side, and there before him, only about 30 feet away, was the other car, approaching at a speed of 75 miles an hour; that his car was making only 50 miles an hour and he applied his brakes, but the accident occurred because the Chevrolet was partly on its wrong side of the road. While admitting that he saw Kenneth Palmer and Richard McBrayer at the time and place about which they testified, he denied that he had said that he drank two beers or cans of beer. He admitted that he had been previously convicted twice for traffic violations. It was agreed between the defendant and the State, and so stated to the jury, that Dr. Hickman, a witness for the defendant, who was unable, for professional reasons, to appear, would, if present, testify that he examined the defendant at Louisville sometime after

the wreck, and that he was not intoxicated and showed no signs of having consumed intoxicating beverages. Several witnesses testified that the defendant's general reputation for sobriety and safe driving in the community in which he lived was good.

Hood, the patrolman, testified that, in a free and voluntary statement to him, the defendant said that the cause of the accident was a car that came out of a side road in front of him, and he did not have time to apply his brakes; and that the defendant said nothing about a cow. Two other witnesses testified about like statements of the defendant to them. Mrs. John Ivy testified that there was no cow anywhere around when she got to the scene of the collision. There was also proof that there is no side road in that vicinity.

Appellant contends that the trial court erred in denying his motion for a continuance because of the absence of a witness, Rufus Jackson, who was expected to testify that defendant's automobile was being driven at a reasonably safe speed without negligence, and that the defendant was not under the influence of intoxicating beverages.

▉ ▉ The record shows that the defendant was arraigned and entered a plea of not guilty on November 2, 1954. On the same day, his counsel's motion for a special venire was granted, and the venire was then presumably drawn, returnable November 4th thereafter. Since the charge was manslaughter, the defendant had the right to call such venire. Section 1795, Code of 1942.

▉ ▉ Section 2506, Code of 1942, provides as follows: "Application for continuance in capital cases shall not be entertained after the drawing of a special venire, except for causes arising afterward, unless a good excuse be shown for not having made the application before." See Fletcher v. State, 60 Miss. 675; Penn v. State, 62 Miss. 450; Lamar v. State, 63 Miss. 265. Obviously one charged with a felony less than capital is not entitled to greater consideration than one who is charged with a capital felony. ▉▉ Besides, the absent witness, Rufus

Jackson, was not even subpoenaed until about 9:30 P.M. before the commencement of the trial the next morning. In addition it was shown that the alleged witness was somewhere in the State of Oregon, where he had gone in search of work; and there was no proof of reasonable expectation that his presence could be obtained at the next term of the court.

On this same ground, the appellant urges that his counsel did not have time to prepare his defense. The proof showed that he did not employ counsel until October 30 or 31, 1954. The attorney began an investigation on November 1. His client did not give him the name of Rufus Jackson until the evening of November 3. But the death occurred September 26 theretofore. An affidavit, charging the offense, was dated October 6, and the defendant was bound over to await the action of the grand jury, with bond being fixed at $5,000.00. Consequently the defendant should have "anticipated the practical certainty of an indictment", and taken steps accordingly. Goins v. State, 155 Miss. 662, 124 So. 785; Bolin v. State, 209 Miss. 866, 48 So. 2d 581.

The Court, in denying the motion for a continuance, did not abuse its discretion. Neither is the court satisfied that injustice resulted therefrom. Section 1520, Code of 1942.

The written statement to B. S. Hood, about which the appellant complains, was not offered to the jury. There was a preliminary investigation, outside the presence of the jury; and although the trial judge held it to be admissable, the State did not offer it in evidence to the jury. The witness however testified orally about what the defendant said after it had been shown that his version of the collision was freely and voluntarily given, and after warning that it could and would be used against him. The defendant himself admitted that he was not abused or mistreated in any manner in any way. There is therefore no merit in this assignment.

■■ Appellant contends that an instruction for the State on culpable negligence was erroneous. This instruction followed the exact language of an instruction which has heretofore been uniformly approved. See Smith v. State, 197 Miss. 802, 20 So. 2d 701; Downs v. State, 206 Miss. 831, 41 So. 2d 19; Sullivan v. State, 213 Miss. 14, 56 So. 2d 93; Hardeman v. State, 216 Miss. 115, 61 So. 2d 797; Coggins v. State, (Miss.) 75 So. 2d. 258.

■■ Appellant also contends that the court erred in refusing his requested "two-theory" instruction. This instruction is never proper except where the case rests entirely upon circumstantial evidence. Alexander's Mississippi Jury Instructions, Vol. 1, Sec. 172, page 82; Brown v. State, 219 Miss. 748, 70 So. 2d 23. This case does not rest upon circumstantial evidence alone. It was made out by direct and positive evidence also. Hence there was no error in the refusal of the instruction.

■■ Due consideration has been given to the other assignments of error, including the alleged inept statements of the trial judge, but we find no reversible error in the record. The jury was well warranted in finding that the death of this young girl resulted not only from the culpable negligence of the defendant, but from such negligence of the grossest and most inexcusable kind. Consequently the judgment is affirmed.

Affirmed.

*Hall, Holmes, Ethridge* and *Gillespie, JJ.,* concur.