349 So.2d 1068 (1977)
Melvin Kenneth BRUCE
v.
STATE of Mississippi.
No. 50219.
Supreme Court of Mississippi.
September 21, 1977.
*1069 Sumner & Sumner, John M. Sumner, Winona, for appellant.
A.F. Summer, Atty. Gen., by Catherine W. Underwood, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and SUGG and WALKER, JJ.
PATTERSON, Chief Justice, for the Court:
Melvin Kenneth Bruce was indicted in Carroll County, Second Judicial District, for the murder of Jimmy Dale Meredith. By change of venue he was tried in the Circuit Court of Webster County where he was convicted of manslaughter and sentenced to fifteen years in the state penitentiary.
His appeal presents the following issues:
1. Was there evidence of culpable negligence causing Meredith's death sufficient to withstand a motion for a directed verdict?
2. Did the trial court err in not directing a verdict for the defendant under the "Weathersby Rule"?
3. Was it prejudicial error to introduce photographs of the deceased?
The appellant admits that Meredith died from a gunshot wound inflicted by him. According to his testimony, he, his brother Brown Lee Bruce, III (Buster), and Meredith were engaged in a game of "Russian Roulette" following a morning of smoking marijuana and drinking beer. The fatal episode which occurred in the home of decedent's mother, can be best described by the appellant's words:
Q. All right. When you made  tell us about the second trip to Farrish's store.
A. We got another six-pack of beer. We talked to Marvin out there up under this pine tree. We left there and rode down the road, and then we come back by and went to Jimmy Dale's house and went to the back bedroom and got on the phone and Buster talked to Carolyn and I talked to her and Jimmy Dale  we all talked to her. Then one of us come up with the idea of playing Russian Roulette, so Jimmy Dale pulled the gun from under the foot of the bed 
Q. You say, one of us. Do you remember who?
A. No, sir.
Q. O.k., when you say, one of us, can you narrow it down any?
A. Me or Jimmy Dale, one.
Q. All right, go ahead.

*1070 A. And, he unloaded the gun and handed it to me and I was looking at the window and he told me it was his grand-daddy's gun and, then, I handed the gun to him to play Russian Roulette, him or me, one, said it, and he was going to put the empty shell in it and I handed it to him, and he handed it to me and I opened it and seen it was empty and put it to my head and clicked it and Buster wouldn't touch the gun, and I clicked it at him, and Jimmy Dale clicked it at his own head. Then, he decided  me or him, one, decided to play it again with the other empty shell. I handed it to him and he redone it and I opened the cylinder and seen that one of them was empty and 
Q. Now, you say, he redone it. What do you mean, he redone it?
A. He put another shell in it. It was supposed to have been an empty shell. And, I opened the cylinder and seen one of them was empty and went to pull the other one out, but I didn't, and I didn't think he would put a real bullet in it, so I closed it up, and put it to my head and clicked it and pointed it at Buster and clicked it and pointed it at Jimmy Dale and it fired.
Q. Did you expect it to fire?
A. No, sir.
Q. Would you have put it to your own head if you'd known it was a live round in it?
A. No, sir.
Q. What happened, then, after the bullet fired?
A. Well, I looked at Buster and then went to the bed. He was laying on the bed  he took the gun from my hand and laid it beside him and we run.
Q. Did anybody wipe the gun off?
A. Yes, sir, I did.
Q. Do you know whether or not your brother might have wiped it off also?
A. No, sir.
The record discloses that Meredith had informed the police of a crime committed by Brown Lee Bruce, III, for which he had been sentenced to serve five years, and that he had threatened "to get even" with Meredith. Brown Lee Bruce, III, testified that he was three years older than Kenneth and that it was Meredith's idea to pay Russian Roulette and not his brother's. He admitted wiping fingerprints from the gun and placing it by the hand of Meredith so the death would appear to be suicide. He stated that he and the appellant avoided the roads in running home after the shooting because they were scared. He denied directing "get-even" threats to Meredith.
The sheriff testified that both the appellant and his brother denied knowledge of the occurrence when first questioned, but later recanted giving the above or similar version of the shooting. A test of decedent's blood revealed no trace of alcohol and it was the opinion of Dr. Hume, a toxicologist, that it would take three or four hours for the alcohol from four beers to dissipate to a negative blood level.
Mississippi Code Annotated section 97-3-47 (1972) provides:
Homicide  all other killings.
Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter.
The jury was instructed upon the state's theory that Meredith's death was the result of culpable negligence.
In Jernigan v. State, 305 So.2d 353 (Miss. 1974), a murder trial where the defendant claimed accidental discharge of a gun and a manslaughter verdict was returned, we stated, in holding that a fact question for determination on culpable negligence was presented for the jury, the following:
The evidence in this case establishes that defendant pointed a loaded gun at Clarence Bowers, and that the gun discharged, killing Bowers. Defendant's actions unequivocally show a conscious, wanton and reckless disregard of the likely fatal consequences of his willful act which created an unreasonable risk. The evidence overwhelmingly supports the jury's verdict of manslaughter. See Frazier *1071 v. State, 289 So.2d 690 (Miss. 1974); Campbell v. State, 285 So.2d 891 (Miss. 1973); Gant v. State, 244 So.2d 18 (Miss. 1971). In Robertson v. State, 153 Miss. 770, 121 So. 492 (1928) this Court stated:
If the pointing of a loaded pistol at a human being is not culpable negligence, under the above definition, then it would be difficult for the mind of mortal man to conceive of stronger facts which would constitute such negligence. (153 Miss. at 776, 121 So. at 493). [305 So.2d at 354]
Compare Latiker v. State, 278 So.2d 398 (Miss. 1973). We are of the opinion the appellant's own testimony was sufficient to withstand a directed verdict and was likewise sufficient for the jury to determine that Bruce was guilty of wanton disregard of human life, culpable negligence, in pointing a deadly weapon at Meredith and deliberately pulling the trigger.
The rule announced in Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933), "that where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge" has no present application because the defendant's testimony while probably successful in exonerating him from the murder charge, was nevertheless incriminating on culpable negligence. Defendant's version of the facts concerning the fatal shot depicts gross indifference and reckless disregard for human life as well as the consequences of his act.
The next act concerns the introduction into evidence of photographs of the deceased. During the opening phases of the trial the defendant offered to stipulate that the appellant fired the shot which caused Meredith's death. The state rejected this stipulation and defense counsel in the presence of the jury made an admission to that effect. When the state later offered the photographs into evidence, an objection was interposed because the death was admitted and therefore the photographs had no probative value and served only to inflame and prejudice the jury against the defendant.
A coroner's report on the cause and fact of death was the subject of stipulation in Curry v. State, 328 So.2d 328 (Miss. 1976). We nevertheless held that although the photographs served no useful purpose, they were not prejudicial because we did not think they were inordinately gruesome to an adult jury acquainted with the norms of life and death. Again, we discern no useful purpose for the introduction of the photographs, but conclude they were not prejudicial under the circumstances of this manslaughter case.
In our opinion the evidence amply supports the verdict of the jury and there appearing no prejudicial error in the record, the verdict and sentence of the court are affirmed.
AFFIRMED.
INZER, and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.