406 So.2d 820 (1981)
Ricky STRODE
v.
STATE of Mississippi.
No. 52965.
Supreme Court of Mississippi.
December 9, 1981.
*821 Vance & Perrier, Travis T. Vance, Jr. and Eugene A. Perrier, Vicksburg, for appellant.
Bill Allain, Atty. Gen. by Catherine Walker Underwood, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and SUGG and LEE, JJ.
LEE, Justice for the Court:
Ricky Strode was indicted, tried and convicted in the Circuit Court of Warren County, Honorable John E. Ellis presiding, for manslaughter by culpable negligence in the shooting of Troy Hensley, and was sentenced to a term of eight years with the Department of Corrections. He has appealed to this Court and assigns two errors in the trial below.

I.
Was the verdict of the jury contrary to the overwhelming weight of the evidence and the law?
Appellant resided in the home of Mr. and Mrs. Wayne Carter in Vicksburg. He was a friend of Troy Hensley, the deceased, his twin brother, Roy Hensley, and Steve Hill. During the evening of September 6, 1980, Carter was cleaning a .22 caliber revolver. Before starting the operation, he emptied the gun by firing six times into the ground. After cleaning it, Carter stated in the presence of appellant that he had fired all the bullets and had no cartridges with which to reload the gun. He returned it to a chest of drawers, where he found several rounds of ammunition and again loaded the weapon. Carter placed the gun in its holster and closed the drawer without telling anyone that it had been reloaded.
The next day, after getting off from work, appellant met the Hensleys and Steve Hill, they went with him to the Carter residence for the purpose of changing clothes, and discussed plans for the evening. They decided to go hunting and fishing in the afternoon and later to drive across the river to P.J.'s Bar in Louisiana. While in the Carter house, appellant showed his friends a loaded snub-nosed .22 caliber revolver. He took it into another room and presently returned with the .22 caliber pistol Carter had cleaned the night before. Appellant began to wave the gun in the air and jokingly said, "One of these days I'm going to walk into P.J.'s and shoot the lights out." Troy Hensley and Roy Hensley were standing in front of appellant approximately six feet away and Steve Hill was seated nearby. The gun was fired and Troy Hensley was fatally wounded. At trial, appellant testified to the following:
Q... . You recognize that a pistol is very dangerous thing, do you not, Ricky?
A. Yes, sir.
Q. You recognize that it is something that kids or anybody else shouldn't be horsing around with, don't you?
A. Yes, sir.
Q. And, yet you were doing that very thing that night, weren't you? That evening you were horsing around with that pistol, weren't you?
A. Yes, sir, I was.
* * * * * *
Q... . You did say that you didn't know the gun was loaded, is that correct?
A. I didn't know it was loaded, no, sir.
Q. And, you didn't know that it was not loaded, did you?
A. I assumed it wasn't.
Q. You did not know that it was not loaded, did you?
A. No, sir, I did not know.
Roy Hensley testified on cross-examination:
Q. Okay. Now, you said he was waving the gun around in the air like this (Indicating), and then when he brought it down the gun fired, is that correct?
A. He had to pull the trigger.
Q. But, Mr. Hensley, you don't know whether he pulled it or not, do you?

*822 A. He pulled the trigger.
Q. Sir?
A. He pulled the trigger.
Q. Did you see him pull the trigger?
A. Yes, sir.
Q. You viewed him pulling the trigger?
A. I was looking right at him.
Steve Hill testified to the following:
A. He just  he was waving the gun around in the air and said one night he was going to walk into P.J.'s and shoot the lights out.
* * * * * *
A. And, then he brought it down and the gun went off.
* * * * * *
A. Well, he was waving it around and he just dropped it down.
Q. Did he pull the trigger?
A. Yes, sir.
The appellant testified that he did not think the gun was loaded but that he did not know it was unloaded. He admitted that he was waving the gun over his head but said that it slipped out of his hand, he tried to catch it and the gun went off while pointed in Troy Hensley's direction.
In Jernigan v. State, 305 So.2d 353 (Miss. 1974), the accused was found guilty of manslaughter. He claimed that he did not know the gun was loaded and that it discharged accidentally. In affirming the conviction, this Court said:
Defendant testified that he just pulled the gun out of his shirt pocket and it went off. Defendant said that he thought the gun was empty and further explained that his reason for pulling the gun out of his pocket was he and Bowers "pranked" with each other in this manner frequently. Defendant contends the gun was discharged by accident; therefore, the evidence does not support the verdict of manslaughter.
This was a question of fact for determination by the jury and we are of the opinion that the evidence overwhelmingly supports the verdict of the jury.
The evidence in this case establishes that defendant pointed a loaded gun at Clarence Bowers, and that the gun discharged, killing Bowers. Defendant's actions unequivocally show a conscious, wanton and reckless disregard of the likely fatal consequences of his willful act which created an unreasonable risk. The evidence overwhelmingly supports the jury's verdict of manslaughter. See Frazier v. State, 289 So.2d 690 (Miss. 1974); Campbell v. State, 285 So.2d 891 (Miss. 1973); Gant v. State, 244 So.2d 18 (Miss. 1971). In Robertson v. State, 153 Miss. 770, 121 So. 492 (1928) this Court stated:
"If the pointing of a loaded pistol at a human being is not culpable negligence, under the above definition, then it would be difficult for the mind of mortal man to conceive of stronger facts which would constitute such negligence." (153 Miss. at 776, 121 So. at 493).
[305 So.2d at 354]
In Latiker v. State, 278 So.2d 398 (Miss. 1973), the Court found that the evidence was insufficient to sustain a conviction of manslaughter by culpable negligence, since there was no testimony of horseplay with the pistol, drunken brawling or any other reckless conduct that could be interpreted to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life. That case was followed in Phillips v. State, 379 So.2d 318 (Miss. 1980).
However, the elements absent in the Latiker and Phillips cases are present in the case sub judice. Also, there is testimony of two witnesses that appellant pointed the pistol at Troy Hensley, pulled the trigger, and the gun fired, resulting in Hensley's death.
We are of the opinion that the facts of this case presented a question for the jury as to appellant's guilt of manslaughter by culpable negligence and the jury verdict is supported by the evidence.

II.
The appellant next contends that the lower court erred in granting Instruction *823 S-4, in that it cut off his defense of accident or misfortune. We have carefully examined that instruction and all other instructions granted in the case and are of the opinion that, considering them together, they correctly submitted the issues to the jury and there is no reversible error in Instruction S-4.
For the reasons stated, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and HAWKINS, JJ., concur.