SIMS *v.* STATE.*

(Division A.    Jan. 16, 1928.)

[115 So. 217.    No. 26337.]

1. HOMICIDE. *Evidence of "culpable negligence" of bus driver tried for manslaughter held sufficient for jury (Hemingway's Code 1927, section 1023).*

Evidence on prosecution, under Hemingway's Code 1927, section 1023 (Code 1906, section 1244), for manslaughter, bus driven by defendant and deceased's automobile having collided at an abrupt curve in a highway, *held* sufficient for jury on the question of "culpable negligence," which does not require the negli-

gence to be so gross as to raise presumption of malice (citing Words and Phrases, "Culpable Negligence").

2. HOMICIDE.  *Manner of driving shortly before killing held admissible to show reckless state of mind of accused at time of accident.*

As tending to shed light on the manner of driving of defendant in manslaughter at the particular curve in a highway where he drove his bus into an automobile, killing deceased, and also as tending to show defendant's reckless and careless state of mind or *animus* at the time of the homicide, the gist of the offense being a reckless disregard of the rights of others on the highway, evidence that on the trip in question, a short time before the accident, he drove at a reckless rate, and out of the road, and so far on the wrong side of the road as to force a passenger to abandon the road was admissible.

3. HOMICIDE.  *Incompetent evidence on prosecution of bus driver for manslaughter that lady powdered his nose on trip held not ground for reversal.*

Admission of incompetent evidence, on prosecution for manslaughter because of defendant running his bus into the automobile of another, killing him, that a young lady sitting beside defendant on the trip amused herself by powdering his nose, *held* not ground for reversal.

4. HOMICIDE.  *Instruction declaring defendant guilty of manslaughter, if, while driving on wrong side of highway, he recklessly collided with deceased's car, held correct.*

Instruction declaring defendant guilty of manslaughter, if, while on the left-hand side of the center of the highway, he, driving a bus, carelessly, grossly, negligently, and recklessly collided with deceased's car, causing his death, *held* to correctly state the law.

5. HOMICIDE.  *Defendant in manslaughter cannot complain of definition, in instruction, of culpable negligence too favorable to him.*

Defendant in manslaughter case cannot complain of inclusion, in instruction, of his definition of culpable negligence, more favorable to himself than generally approved.

---

*Corpus Juris-Cyc. References: Criminal Law, 17CJ, p. 317, n. 10; p. 359, n. 64; Homicide, 29CJ, p. 1154, n. 96; 30CJ, p. 195, n. 64; p. 325, n. 83; p. 408, n. 30; Homicide by negligent operation of automobile, see annotation in 30 L. R. A. (N. S.) 458; 33 L. R. A. (N. S.) 403; L. R. A. 1918B, 954; 2 R. C. L. 1212; 4 R. C. L. Supp. 164.

APPEAL from circuit court of Warren county.

HON. E. L. BRIEN, Judge.

'Ernest Sims was convicted of manslaughter, and he appeals. Affirmed.

*George S. Hamilton, E. B. Todd* and *H. K. Murray,* for appellant.

The indictment is based on section 974 of Hemingway's Code, section 1244 of the Code of 1906. The case however was tried on a theory which was a combination of the manslaughter statute and the motor vehicle laws passed by the legislature in 1916, chapter 116, Laws of 1916, sections 5774-5789 of Hemingway's Code. The violation of the manslaughter statute, however, is a felony, while that of the motor vehicle laws is a misdemeanor only. The theory seems to have been that if the defendant violated any provision of the vehicle laws and death resulted therefrom, that he was guilty of manslaughter.

Considering the case from the standpoint of the manslaughter statute, culpable negligence means criminal negligence, and more than ordinary or civil negligence, and criminal liability for negligence is not measured by the same standard as civil liability. 29 C. J., p. 1154.

In the case of *State of Wyoming* v. *McCombs,* 239 Pac. 526, 41 A. L. R. 717, the court had under consideration the meaning of the words "culpable neglect or criminal carelessness" as used in a manslaughter statute and as applied to a conviction of manslaughter growing out of an automobile collision. The statute provided that: "Whoever unlawfully kills any human being . . . by any culpable neglect or criminal carelessness, is guilty of manslaughter, and shall be imprisoned in the penitentiary not more than twenty years." The applicable part of that statute is similar to the manslaughter statute under consideration in this case. The court in that case said:

"There are, it is true, cases holding that any unlawful killing as the result of want of ordinary care may constitute manslaughter, upon the theory that unlawful killing of another without malice, involuntarily, but in the commission of any unlawful act (4 Bl. Com.), may be manslaughter, and that want of ordinary care is an unlawful act. *Clemens* v. *State,* 176 Wis. 289, 21 A. L. R. 1490, 185 N. W. 209, and cases there cited. But that rule was criticised in the case just mentioned, and when our statute provided that the negligence must be culpable or criminal—terms evidently used synonymously—it would seem that it meant to provide specifically that the unlawful act relied on in manslaughter, must, if it consists of negligence, be more than ordinary negligence, and must be culpable or criminal in its nature. And that seems to be the general rule. . . . (Citing authorities).

" 'To make an act carelessly performed resulting in death a criminal one, the carelessness must have been gross, implying an indifference to consequences; and the term "gross negligence" means something more than mere negligence. It means wantonness and disregard of the consequences which may ensue, and indifference to the rights of others that is equivalent to a criminal intent.'

"And carelessness by reason of driving at a speed that is unreasonable or is such as is likely to endanger life or limb is not necessarily criminal carelessness within the meaning of our statute providing for punishment for manslaughter. Thus in *State* v. *Clark,* 196 Iowa 1134, 196 N. W. 84, the court said:

" 'Instruction 10 is also subject to legal criticism, since under it, if the jury found that the defendant failed "to have the motor vehicle under control or failed to drive said vehicle in a careful and prudent manner or failed to drive it at a rate of speed not endangering the life of other persons, or in driving the said vehicle at an unlawful rate of speed caused the injury to Edna Morgan which

resulted in her death'' the jury could not do otherwise than convict. This instruction eliminated the gross negligence and reckless indifference to life which supplies the intent in criminal law in a case of this character.'

"In *Wright* v. *State,* 90 Tex. Crim. Rep. 435, 235 S. W. 886, the court said:

" 'It is a fairly well-known rule that if one, by an act which is a violation of law, injures another, he is guilty *per se* of actionable negligence.; but it cannot be said as a matter of law or fact that one who drives a vehicle at a greater rate of speed' than ten miles per hour, or in a manner not prudent or careful, is *ipso facto* guilty of gross negligence. Gross negligence is not an expression of frequent use in criminal procedure, and, standing alone, perhaps lacks that clearness of definition and exactness of application which ought, properly, to characterize terms used in defining an act intended to be made penal. In civil cases the courts of this state define it as such negligence as evinces a reckless disregard of human life or bodily injury, or such conscious indifference to the rights of others as amounts to an intentional violation of them. . . .' "

Measured by the standard laid down in the Wyoming case, the record in this case fails to sustain the conviction. Nowhere in the record does it appear that Sims was guilty of. such culpable or criminal negligence at the time and place in question as to evince a reckless disregard of human life or bodily injury or such conscious indifference to the rights of others as amounts to an intentional violation of them.

The first instruction given the state is taken from the motor vehicle laws, and abstractly state a correct proposition of law, and' would have been appropriate in a civil case; but we submit that it should not have been given in this a criminal case.

The second instruction given the state follows the manslaughter statute to the extent of using the words ''culpable negligence,'' but fails to contain the very impor-

tant qualification contained in the statute, namely, "without authority of law." And the instruction contains no equivalent of this qualification, such as would be expressed in the words "unlawful" or "unlawfully," "felonious" or "feloniously." These qualifications, we submit, are essential, and the omission of them is fatal.

The third instruction given the state is objectionable for the same reason as the second. It was also confusing by reason of its reference to the left-hand side of the center of the highway, as though that were the test of the guilt or innocence of the defendant on the charge of manslaughter.

Under the testimony in this case, Sims' conviction of manslaughter cannot and should not be sustained.

*Rufus Creekmore,* Assistant Attorney-General, for the state.

While it is true that a higher degree of negligence is necessary to convict one under our manslaughter statute than would be necessary to sustain a civil action, yet it certainly cannot be such an extreme degree of negligence as counsel urge. It is not necessary that the negligence be so great that criminal intent may be inferred therefrom, but it is only necessary that the negligence be culpable.

The quotation in 29 C. J., which is used by counsel in their brief, states that a higher degree of negligence is necessary under such circumstances as this, but the very sentence which follows the quotation used by counsel reads thus: "The negligence must not be so gross as to raise the presumption of malice." So it is insisted that it is only necessary for the state to have proven the defendant to have been culpably negligent.

We are, therefore, logically led to a consideration of what is the meaning of "culpable negligence." The Missouri court defines it as "The omission to do something which a reasonably prudent and honest man would do,

or the doing of something which such a man would not do under the circumstances surrounding a particular case."
*State* v. *Horner,* 266 Mo. 109, 180 S. W. 873.

An examination of 2 Words and Phrases, 1780, shows that this same definition of culpable negligence has been approved by the courts of Arkansas, Iowa, New Hampshire, New York, and South Carolina. Words and Phrases also quotes the supreme court of Kansas: "Culpable negligence is the failure to exercise that degree of care either slight, ordinary, or great, which is required in a particular instance, although the party may have exercised some care, and it may be only slight, less than the degree of care required." See also 1 Words and Phrases (New Series), p. 1174, where definitions substantially the same as the foregoing are quoted from the decisions of numerous other states.

But, regardless of whether or not counsel are correct the trial court adopted the defendant's theory as to the meaning of these words and, at his request, instructed the jury that, "culpable negligence means gross or criminal negligence such as evinces a wanton or reckless disregard of the lives or safety of others." And that if the state failed to prove that the defendant "was guilty of such gross or criminal negligence as evinces a wanton or reckless disregard of the lives or safety of others" then the verdict should be not guilty. This case was submitted to the jury upon the defendant's theory of culpable negligence.

Counsel, however, apparently take the view that under the facts no culpable negligence was shown. They have cited and quoted from the opinion of the court in the Wyoming case of *State* v. *McCombs,* 239 Pac. 526; 41 A. L. R. 717. That case is no authority for the position of appellant in any respect whatsoever, but, upon analysis, it proves to be authority for the state. In that case the court gave the following instruction at the request of the state: "No motor vehicle shall be operated at a speed greater than twenty miles per hour, nor at a speed so as

to endanger the life or limb of any person. . . . Anyone who by so doing shall seriously maim, injure, or disfigure any person or persons or cause their death shall be guilty of a felony.'' The court held that this instruction was erroneous for two reasons, first, because the statute fixing the maximum speed limit at which automobiles could be operated had been repealed. This, of course, made the instruction erroneous. The court also held that the instruction was erroneous because it told the jury that the defendant was guilty of a felony, if the injury was caused by driving at a rate of speed which endangered life or limb. The instruction, of course, was also erroneous because it did not submit to the jury the guilt of the defendant on the question of culpable negligence as was provided in their manslaughter statute. It was on this last proposition that counsel quote from the opinion of the court.

The court instead of discharging the defendant as counsel insist should be done in the instant case, sent the case back for a new trial. In *State* v. *Horner* (1915), 266 Mo. 109, 180 S. W. 873, a prosecution for manslaughter under a statute making the killing of a human being by the culpable negligence of another manslaughter in the fourth degree, a verdict of guilty was held supported by evidence tending to show that the deceased, while crossing a street at the intersection of another street in the middle of the afternoon, at a place where there was very little traffic and an unobstructed view, was struck by the right-hand lamp of an automobile running from fifteen to twenty miles an hour, without warning, as it swerved to the left in an attempt to avoid striking him, and was thrown twenty-five feet away.

In the case of *Nail* v. *State* (Okla., 1925), 242 Pac. 270, the court said the following: ''In order to find the defendant guilty, it was necessary that the jury find she caused the death of deceased by an act of culpable negligence under the provisions of paragraph 1745, Comp. Laws, 1921, as follows: 'Any killing of one human be-

ing by the act, procurement, or culpable negligence of another, which, under the provisions of this chapter, is not murder, nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree.' Now, if the act of the defendant which caused the death of John Falcone, as shown by the evidence, was an act of culpable negligence as provided by the above statute, the jury were warranted in returning the verdict they did.''

For other cases where the court held the facts were sufficient to sustain a verdict of guilty of manslaughter see: *Schultz* v. *State* (Neb.), 130 N. W. 972, 33 L. R. A. (N. S.) 403; *Clemons* v. *State* (Wis., 1921), 185 N. W. 209, 21 A. L. R. 1490.

For further discussion of the question of culpable negligence as used in manslaughter statutes, see the elaborate case notes appended to the following cases: *Copeland* v. *State* (Tenn., 1926), 285 S. W. 563, 49 A. L. R. 605; *People* v. *Benson* (Ill., 1926), 152 N. E. 605, 46 A. L. R. 1056; *State* v. *Trott* (N. C., 1925), 130 S. E. 627; 42 A. L. R. 1120; *State* v. *McCombs* (Wyo., 1925), 239 Pac. 526; 41 A. L. R. 725; *Ex parte Leon Liotard* (Nev., 1923), 217 Pac. 960, 30 A. L. R. 66; *State* v. *Sudderth* (N. C., 1922), 114 S. E. 828, 27 A. L. R. 1182; *Clemons* v. *State* (Wis., 1921), 185 N. W. 209, 21 A. L. R. 1504; *People* v. *Townsend* (Mich., 1921), 183 N. W. 177, 16 A. L. R. 914; *State* v. *Schaefer* (Ohio, 1917), 117 N. E. 220, L. R. A. 1918B 945; *Schultz* v. *State* (Neb., 1911), 130 N. W. 972, 33 L. R. A. (N. S.) 403; *State* v. *Goetz* (Conn., 1910), 76 Atl. 1000, 30 L. R. A. (N. S.) 458.

Counsel next insist that the first instruction for the state is erroneous insofar as this particular case is concerned. This instruction appears in the record at page 13. Although counsel admit that the principle stated in this instruction is correct as an abstract principle of law, yet they argue that it should not have been granted in a criminal case. Before it can be said that one is negligent, there must be omission on his part to perform

some duty imposed on him, or a failure to do that which under the circumstances a reasonably prudent man would do. This is true whether the party be charged with ordinary and simple negligence in a civil action or with culpable negligence in a criminal suit. While it is true that the appellant is not being tried for the violation of the motor vehicle act, yet the authorities are unanimous to the effect that the violation of the statute is evidence of negligence on the part of the defendant and the jury is entitled to be instructed with reference to such statutes.

The case note appended to the case of *People* v. *Harris, supra,* is especially applicable here, a part of it reading: "Where a charge of manslaughter by the operation of an automobile is based on a statute providing that the killing of another by a reckless or grossly negligent act shall constitute manslaughter, the fact that the automobile was operated in violation of a statute or ordinance regulating speed or prescribing precautions to be observed is not conclusive of guilt, but is a circumstance bearing on the question whether the operation of the automobile was in fact criminally negligent. *Madding* v. *State,* 118 Ark. 506, 177 S. W. 410; *State* v. *Campbell,* 82 Conn. 671, 135 Am. St. Rep. 293, 74 Atl. 927, 18 Ann. Cas. 236; *State* v. *Goetz,* 83 Conn. 437, 30 L. R. A. (N. S.) 458, 76 Atl. 1000; *People* v. *Falkovitch,* 280 Ill. 321, 117 N. E. 398, Ann. Cas. 1918B 1077; *People* v. *Camberis,* 297 Ill. 455, 130 N. E. 172; *People* v. *Harris* (reported herewith), *ante* 910; *State* v. *Goldstone,* 144 Minn. 405, 175 N. W. 892; *Schultz* v. *State,* 89 Neb. 34, 33 L. R. A. (N. S.) 403, 130 N. W. 972, Ann. Cas. 1912C 495; *State* v. *Dugan,* 84 N. J. L. 603, 89 Atl. 691, 85 N. J. L. 730, 89 Atl. 1135."

In *People* v. *Scanlon,* 132 App. Div. 528, 117 N. Y. Supp. 57, where defendant, while running an automobile on a public highway, in attempting to pass a buggy, ran into it, and caused the death of a boy riding therein, it was held that driving a motor vehicle at a rate prohibited by law is evidence of negligence, and on a trial

for homicide by the negligent operation of an automobile, where there is testimony in the case that the automobile was running at the rate of twenty-five miles per hour, it was not error for the judge in his charge to the jury to call attention to the motor vehicle law which prohibited a person operating a motor vehicle at a greater speed than twenty miles per hour. The court said: "With a heavy machine weighing from three to four thousand pounds, going at a rate of twenty-five miles an hour, it is indefensible negligence to attempt to pass a buggy within a few inches."

Counsel next object to instruction number two. The objection of counsel to this instruction is that it fails to include the words, "without authority of law." It is impossible to conceive of a killing by the culpable negligence of a person with authority of law. The use of the words "that the death of Waverly Conway was the direct result of and caused by the culpable negligence of Ernest Sims" necessarily carries with it the meaning that the killing was without authority of law. No other meaning could be ascribed to it and have the instruction read intelligently. The defendant requested of and received from the court an instruction in practically the same words. Instruction Number three is clearly correct and states the principle of law which was applicable to the case. The objections to it have been fully answered in the preceding paragraphs of this brief.

McGowEN, J., delivered the opinion of the court.

The appellant, Ernest Sims, was indicted, tried, and convicted for the crime of manslaughter in the circuit court of Warren county, and sentenced to serve a term of three years in the State Penitentiary. From this conviction and sentence imposed he prosecutes this appeal.

The indictment was drawn under section 1023, Hemingway's Code 1927 (section 1244, Code of 1906), which is as follows:

''Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this chapter, shall be manslaughter.''

In the language of this statute, the indictment charged the appellant with manslaughter in the killing of Waverly Conway as a direct result of a collision between a bus driven by the appellant and an automobile driven by the deceased. Conway was hurled from his car by the force of the collision and died, from the injuries received by him, a short while after. The collision occurred at a dangerous bend—described by one of the witnesses as an ''elbow curve''—on the public highway between Jackson and Vicksburg, at the corner of the Jewish Cemetery. This curve is very abrupt, making a complete right angle turn within a few feet, and, upon approaching it, going towards Vicksburg, the road goes west, then turns to the left around the curve and goes south. On the inside of this curve, on the left going to Vicksburg, is the Jewish Cemetery, around which is an iron picket fence, which extends along the road for some distance before reaching the curve and after passing it. Along the inside of the curve, between the fence and the road, a line of stobs or posts is driven to prevent vehicles from striking the fence when making the curve.

The car driven by the appellant was a large passenger bus, thirty feet in length from bumper to bumper, and was used by appellant in transporting passengers from Jackson to Vicksburg, and was then on its trip west. The car driven by Conway was a Dodge roadster, and he was leaving Vicksburg, going in an easterly direction toward Jackson.

The testimony for the state tended to show that from the time the bus left Jackson, it was driven by appellant in a careless and reckless manner, and at times at a very high rate of speed; that a young lady sat beside him on the front seat; that he was, to some extent, more engrossed in his attentions to this bewitching siren, who

amused herself by powdering his nose and lighting his cigarettes for him, than his driving; and that they were, according to the state's testimony, very much interested in each other. One lady, a passenger on the bus the entire trip, testified that the attentions of the fair damsel to the driver caused him to lose control of the bus so that it left the highway and ran into a shallow ditch to the side of the highway several miles from where the accident occurred; and that at another place along the route, when meeting another car, the driver of the latter was forced to leave the road on his side.

Mrs. Keenum testified that the appellant was driving "pretty peert" when he went to make the curve; that Mr. Conway "had done made his turn, and he was right absolutely up against the curb, Mr. Conway was, and when Sims [the appellant] when he got there, instead of keeping to the right, he just cut right across and hit him, Mr. Conway, right in on his own roadway, that's the way I looked at it, and the way anybody else would, I guess." She testified that it was "the front, the engine, the radiator," which struck Conway's car; that she did not know at what speed he was driving, but that he was driving "pretty fast."

Another witness testified that the driver looked as if he were going to take the road straight at the corner; that he didn't see the car until just after the time of the collision; that Conway's car was on the right side of the road for him; that the bus driver, when he was almost at the corner, "just turned the bus around, turned to the left and swung in there and hit the man;" that this occurred just at the time Conway's car was going around the corner; and that Conway was as far on his right as he could get without going into a ditch.

Leon Hunter, a witness for the state, testified that he was standing at this curve, and that Conway was driving slowly; that Conway held up his hand and told him that he would pick him up when he got around the curve. He also testified that the bus was on the wrong or the left-

hand side of the center of the road at the time of the accident, and stated that the cars passing had to drive to the right-hand side of the bus in order to get by. He said the bus was traveling at a high rate of speed. However, one witness who undertook to estimate the rate of speed at which the bus was traveling fixed it at ten miles per hour.

The defendant and his witnesses testified that the bus was under control, running at a low rate of speed; that the collision occurred because of Conway's reckless speeding; and that the bus was struck on its left side where the battery box was. The defendant denied that he had been so interested in the young lady, and she also testified that the driver, the appellant, paid strict attention to the driving of the bus, and that there had been no reckless driving; and that at the time of the accident, the appellant was on the extreme right-hand side of the road and had control of his car.

We set out here instructions 1, 2, and 3 for the state:

"The court instructs the jury that it is the legal duty of a person operating a motor vehicle, on approaching the intersection of a public highway, to reasonably turn or cause the same to be turned to the right of the center of the highway, and it is further the legal duty of a person operating a motor vehicle to turn to the right of the center of the highway when they meet another vehicle.

"The court instructs the jury that if they believe from the evidence beyond a reasonable doubt that the death of Waverly Conway was the direct result of and caused by the culpable negligence of Ernest Sims, the defendant, then the said defendant, Ernest Sims, is guilty as charged in the indictment and the jury should so find.

"The court instructs the jury that if they believe from the evidence beyond a reasonable doubt that the defendant, Ernest Sims, on approaching the intersection of the highways and the sharp curve at the northwest corner of the Jewish Cemetery, was on his left-hand side of the center of the highway, and while on said left-hand

side of the public highway he carelessly, grossly, negligently, and recklessly collided with or ran into the car of Mr. Waverly Conway, throwing him from his said car, thereby injuring him, and, as a result of said injuries, he died, the defendant is guilty as charged in the indictment, and the jury should so find.''

We also set out instruction 8, asked for by the appellant and given by the court:

''The court instructs the jury for the defendant that the question in this case is in regard to whether or not at the time and place in question the defendant was guilty of culpable negligence, and that the death of the decedent was proximately caused by such negligence; that culpable negligence means gross or criminal negligence such as evinces a wanton or reckless disregard of the lives or safety of others; and that, in this case, if the state fails to prove either by evidence, or by the lack of evidence, that the defendant, at the time and place in question, was guilty of such gross or criminal negligence as evinces a wanton or reckless disregard of the lives or safety of others, beyond all reasonable doubt, it is your duty to find the defendant not guilty.''

We shall take up the assignments of error in their logical order, without regard to their arrangement by counsel.

First. ''The court erred in overruling defendant's motion for a peremptory instruction'' in that the evidence, as a whole, was not sufficient to sustain a conviction of manslaughter. We have detailed enough of the evidence to demonstrate that, according to the evidence of the witnesses for the state, the appellant, at the time of the accident, was driving a heavy passenger bus to the left of the center of the highway; he was in a dangerous curve, had a car thirty feet long to handle, was already on the wrong side of the road, and turned straight into the car of deceased at a time when the deceased was undertaking to stop his car and take on a passenger. All of this is denied by the defendant and his witnesses. But

the weight of the evidence and the credibility of the witnesses was a question for the jury. There is no merit in the contention, and we do not understand from the brief of counsel that he seriously contends, that the appellant was entitled to a peremptory instruction if the evidence shows culpable negligence. This leads us to a discussion of the meaning of the phrase ''culpable negligence'' in connection with the statute relative to manslaughter. Counsel insists that negligence must not only be reckless and gross and of a higher degree than is required in a civil action, but that the act must be criminal, and cites 29 C. J. 1154, section 141(4). If we understand counsel's contention, he contends that the act complained of as being criminally and intentionally negligent, in view of this statute, must be so gross as to raise the presumption of malice.

Not so. If this were the rule and the presumption of malice was raised, the act would be intentional, and the crime could no longer be manslaughter, but would be murder. It is unquestionably true that the negligence must be of a higher degree, in order to convict of manslaughter, than would be required to hold a party liable in a civil action. But culpable negligence, like reasonable doubt, is an undefinable phrase, and we have read many attempted definitions thereof. Culpable negligence must be ascertained from the facts of each case, and no ironclad statement can be set forth as applicable to all classes of cases. In 1 Words and Phrases, Second Series, p. 1174, the following statement is set forth as a definition, which we think will serve as a general guide to a correct conclusion as to what constitutes culpable negligence. It is as follows:

''The omission to do something which a reasonable, prudent, and honest man would do, or the doing of something which such a man would not do, under the circumstances surrounding the particular case.''

This definition has been approved by a number of courts.

We think the evidence of the passengers on the bus warranted the jury in believing that the defendant was blamably negligent to such a degree as to amount to culpable negligence, and then and there was driving, in violation of the motor laws, to-wit, chapter 116, Laws 1916, to his left of the center of the road.

The peremptory instruction requested by the defendant was properly refused as there was conflict in the evidence, but the state's evidence made a case of culpable negligence.

Second. It is contended that the court erred in permitting the state to prove the manner of appellant's driving on this occasion. Counsel presents no authority, but the gist of the offense charged here was a reckless disregard of the rights of others on the public highway; and the evidence that the appellant drove at a reckless rate and out of the road on this particular trip a short time before the accident, and that he drove so far on his wrong side of the road as to force a traveler he was meeting to abandon the road, tended to shed light on the manner of driving at this particular curve where a human life was lost. See 30 C. J. 203, section 433. It also tended to show the reckless and careless state of mind or *animus* of the defendant at the time of the homicide.

Of course, the evidence that the young lady was engaged in powdering appellant's nose was not competent, and yet, but for the admission of this evidence, this case could not be reversed.

We think the instructions given for the state correctly announce the law. By them, the jury was told that, while on his left-hand side of the center of the highway he carelessly, grossly, negligently, and recklessly collided with or ran into the car of Mr. Conway, thereby injuring him, and as a result of which injury he died, the defendant is guilty of manslaughter, and the defendant in this case cannot complain because his definition of culpable negligence in instruction 8 was given in said instruction, wherein the jury was told that culpable negligence means

gross or criminal negligence such as evinces a wanton or reckless disregard of the lives or safety of others, which will be seen is a stronger statement than is generally approved by the courts of this country in cases of manslaughter arising from reckless driving of motor vehicles on the public highways.

We do not think there is any merit in the other contentions, or any error in this record upon which we could predicate a reversal.

*Affirmed.*