Louis FIGHT *v.* STATE of Arkansas

CR 93-114                                    863 S.W.2d 800

Supreme Court of Arkansas
Opinion delivered October 18, 1993

*Oscar Stilley*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, Louis Fight, was convicted of manslaughter, leaving the scene of a personal injury accident, and two counts of aggravated assault. He was sentenced to 10 years incarceration on the manslaughter count and six years on each of the other counts. The death and injuries were inflicted by a person other than Fight who drove her vehicle into the victims and then away from the scene. The basis of Fight's conviction was that he contributed to the driver's intoxication by sharing a marijuana cigarette with her. We agree with Fight's contention that the evidence was insufficient to support the conviction, thus the conviction is reversed and dismissed. Other arguments need not be addressed.

The case was tried before a jury. From the evidence presented, viewed most favorably to the State's case, the Trial Court could have concluded the following events took place in the early morning hours of August 27, 1992. Fight and Renee Smith were together at her home. Both were drinking, and Fight rolled one marijuana cigarette which he shared with Ms. Smith when they left her house. They got in Ms. Smith's pickup truck with Ms. Smith driving. Her blood alcohol level was .16% and his was .15% when they were arrested a short time later.

Ms. Smith drove on a highway past the scene of a burning car. She then turned her truck around and headed back to the fire scene where there were several emergency vehicles with their emergency lights flashing. At least one emergency vehicle was parked in the middle of the highway, and hoses were stretched from the emergency vehicle over to the burning car which was at the side of the highway. Instead of driving on the vacant part of the highway, and thus around the emergency vehicle and the burning car, Smith drove between the emergency vehicle and the burning car. Her truck struck two policemen, Jerry Stallings and James Andoe, and one fireman, Johnnie Grizzle. Stallings was killed, and the other two were injured.

Ms. Smith continued driving even though she blew out one of her tires on a fire hose coupling. Officer Andoe chased the vehicle until it was forced to stop, and he arrested both occupants.

## Sufficiency of the evidence

There is no question that a directed verdict motion was made at the proper points in the trial on the ground that there was a lack of evidence to support the conviction. The State contends we should not address the sufficiency of the evidence issue as Fight's abstract does not apprise us of the argument made to the Trial Court in conjunction with the motions for directed verdict. The State does not deny that the argument made by Fight on appeal was made to the Trial Court, but contends that it is not properly abstracted.

We agree with the State's citation of *Porchia* v. *State,* 306 Ark. 443, 815 S.W.2d 926 (1991), for the proposition that the record on appeal is limited to that which is abstracted. The State also quite correctly cites *Moore* v. *State,* 304 Ark. 257,

801 S.W.2d 638 (1990); *Pilcher v. State,* 303 Ark. 335, 796 S.W.2d 845 (1990); and *Taylor v. State,* 299 Ark. 123, 771 S.W.2d 742 (1989), holding that a directed verdict motion setting forth a specific theory must be made to the Trial Court.

Unlike cases where we have dismissed appeals for total failure to abstract an essential motion or judgment, *see, e.g., Taylor v. State, supra,* or where the abstract displays a different argument made to a trial court than is made on appeal, *see, e.g., Pilcher v. State, supra,* we do not find this abstract to be "flagrantly deficient." *See* Arkansas Supreme Court and Court of Appeals Rule 4-2(b)(2). From Fight's abstract, we know that the directed verdict motions were made. From his argument we know what his contention with respect to the directed verdict motions is. Again, the State does not deny that the contention now argued was argued to the Trial Court.

It is obvious that, as Fight did not directly cause the injuries resulting in the charges, his criminal responsibility must be based upon accomplice liability. Fight asserts there can be no basis for the conviction because there can be, as a matter of law, no accomplice liability based solely upon supplying an intoxicant to one who then commits a criminal act. In general, when the sufficiency of the evidence is challenged, we look to the evidence presented and affirm if there is substantial evidence to support the verdict. *Abdullah v. State,* 301 Ark. 235, 783 S.W.2d 58 (1990). We review the evidence in the light most favorable to the appellee, considering only that which tends to support the verdict. *Brown v. State,* 309 Ark. 503, 832 S.W.2d 477 (1992); *Hooks v. State,* 303 Ark. 236, 795 S.W.2d 56 (1990). But the evidence thus considered must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Pemberton v. State,* 292 Ark. 405, 730 S.W.2d 889 (1987).

The evidence in this case concerning intoxicants came from Fight's statement after he was arrested that he shared a marijuana cigarette with Ms. Smith at some point in the evening. There was undisputed evidence presented by toxicologist Randall Tucker that Ms. Smith was over the legal limit of .10% for alcohol consumption and operation of a vehicle at the time of the incident. *See* Ark. Code Ann. § 5-65-103 (1987). There were in addition traces of cannabanoids in her fluid sample. No evidence

was presented suggesting that Fight supplied any alcohol to Ms. Smith, and no witness testified that intoxication from the sharing of whatever quantity of marijuana Fight shared with her created or enhanced the danger of injury to another.

Fight cites cases which demonstrate that we have clearly held in civil litigation there is no liability on the supplier of intoxicants because it is the consumption of them that is to blame rather than the supplying of them. *Rone* v. *H. R. Hospitality, Inc.*, 297 Ark. 107, 759 S.W.2d 549 (1988); *Carr* v. *Turner*, 238 Ark. 889, 385 S.W.2d 656 (1965). We have repeatedly stated that the issue of civil liability for supplying alcohol to one who then injures another rests in the hands of the Arkansas General Assembly. He also cites older dram-shop cases which considered the effect of a statute requiring one selling liquor to post a bond. In those cases it was held that the statute imposed no liability on the supplier beyond the natural consequences of the consumption of alcohol, generally stating that the supplying of alcohol was not the proximate cause of the injuries in question. *Bolen* v. *Still*, 123 Ark. 308, 185 S.W. 811 (1916); *Peter Anderson & Co.* v. *Diaz*, 77 Ark. 606, 92 S.W. 861 (1906); and *Gage* v. *Harvey*, 66 Ark. 68, 48 S.W. 898 (1898).

The State responds on the manslaughter charge by citing *Lewis* v. *State*, 220 Ark. 914, 251 S.W.2d 490 (1952), for the proposition that it is possible for a defendant to be criminally liable for recklessness causing the death of another in a vehicular homicide even if that defendant is not driving the vehicle at the time of the incident. The *Lewis* case opinion referred to *Fitzhugh* v. *State*, 207 Ark. 117, 179 S.W.2d 173 (1944), in which we held that a drunk passenger could be convicted as an accessory before the fact to involuntary manslaughter and held to the same degree of fault as the driver who was the principal offender.

In the *Fitzhugh* case, each of the occupants of the truck, Fitzhugh and Davis, contended the other was driving and that he had no recollection of the incident. Fitzhugh and Davis were drunk or had been drinking in the truck belonging to Fitzhugh, and we said the jury could have found that, even if Fitzhugh was not actually driving, he was not so drunk that he could not know that his truck was being driven on the wrong side of the road in such a manner as to become an instrument of death.

The facts and instructions in the *Lewis* case were similar to those in the earlier *Fitzhugh* case. Lewis owned the car, and each defendant stated the other was driving and denied recollection of the incident. Both were charged under the accessory before the fact law. The instructions stated that if one of the defendants was driving the car in a reckless, willful manner with wanton disregard for the safety of others, and the other defendant was riding as a passenger and was aiding, abetting, or assisting in the unlawful operation of the car by the co-defendant, then both defendants could be found guilty of involuntary manslaughter. The jury was also told that if either defendant was under the influence of intoxicants and incapable of properly operating the car and the non-driver, with knowledge of the co-defendant's condition and incapacity, knowingly permitted him to operate the car in a reckless manner without protest and encouraged such driving, then the non-driver would be guilty of criminal negligence and involuntary manslaughter in the event the jury found the driver guilty of the charge.

The *Lewis* and *Fitzhugh* cases are distinguishable from, and provide no support for the Trial Court's ruling in, this instance. At the time those cases were decided, "accessory before the fact" was defined as one who stands by, aids, abets, or assists, or who, not being present, advises and encourages the perpetration of the crime. The same was true when we decided *Stacy* v. *State*, 228 Ark. 260, 306 S.W.2d 852 (1957), where the owner of a truck was responsible for having an intoxicated person drive it, and a death resulted.

The current Criminal Code treats the concept of accessories differently. An accessory before the fact is now referred to as an accomplice, and one who was formerly an accessory after the fact is now guilty of a separate crime—hindering apprehension and prosecution. *See Tyler* v. *State*, 265 Ark. 822, 581 S.W.2d 328 (1979). An accomplice is no longer one who merely stands by while a crime is being committed. *Nelson* v. *State*, 306 Ark. 456, 816 S.W.2d 159 (1991).

An accomplice of another person in the commission of a crime has, since 1975, been defined in Ark. Code Ann. § 5-2-403 (1987) and its predecessor codifications as follows:

(a) A person is an accomplice of another person in the

commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he:

(1) Solicits, advises, encourages, or coerces the other person to commit it; or

(2) Aids, agrees to aid, or attempts to aid the other person in planning or committing it; or

(3) Having a legal duty to prevent the commission of the offense, fails to make proper effort to do so.

(b) When causing a particular result is an element of an offense, a person is an accomplice in the commission of that offense if, acting with respect to that result with the kind of culpability sufficient for the commission of the offense, he:

(1) Solicits, advises, encourages, or coerces the other person to engage in the conduct causing the result; or

(2) Aids, agrees to aid, or attempts to aid the other person in planning or engaging in the conduct causing the result; or

(3) Having a legal duty to prevent the conduct causing the result, fails to make proper effort to do so.

Mere presence, acquiescence, silence, or knowledge that a crime is being committed, in the absence of a legal duty to act, is not sufficient to make a person an accomplice. *Scherrer* v. *State*, 294 Ark. 227, 742 S.W.2d 877 (1988). There is no evidence that Fight did anything with the purpose of promoting or facilitating the crimes charged against Smith and insufficient evidence to move one beyond conjecture that Fight's actions aided the conduct which resulted in the death.

The State's argument on the merits of the question whether Fight was properly convicted points out that manslaughter, as defined in Ark. Code Ann. § 5-10-104(a)(3) (1987), requires a finding of a particular result, *i.e.,* the death of another person. The definition of aggravated assault, found in Ark. Code Ann. § 5-13-204(a) (1987), does not require a finding of a particular result, only that the accused acted in a certain way in certain circumstances. The latter is also true of the offense of leaving the scene of

a personal injury accident as defined in Ark. Code Ann. § 27-53-101(a)(1) (Supp. 1991) making the "driver" responsible. The State's point is that Fight's argument on the aggravated assault and leaving the scene charges is without merit because a lack of causation argument may succeed only with respect to those criminal offenses requiring proof that the accused caused some result to occur, citing *Neely* v. *State,* 18 Ark. App. 122, 711 S.W.2d 482 (1986).

The *Neely* case does not support the State's argument. Neely argued that because he did not intend to kill his victim he could not be guilty of aggravated assault for having held a knife up to him with the intent of cutting him and scaring him. The Court of Appeals held that the requirement that the defendant act "purposefully" to be guilty of aggravated assault related to the conduct of the defendant rather than the intended result. In Fight's case, we are dealing with an entirely different matter, *i.e.,* whether it was proven that Fight, in the words of our accomplice liability statute, did anything "with the purpose of promoting or facilitating the commission of an offense" allegedly done by someone else, or was shown to have "act[ed] with respect to that result with the kind of culpability sufficient for the commission of the offense." Ark. Code Ann. § 5-2-403(a) and (b) (1987).

As to manslaughter, the State argues Fight was properly convicted if it was shown he "acted recklessly with regard to the required result, which is the death of another person." Again, the only citation given is *Lewis* v. *State, supra*, which we have distinguished.

We have found neither an Arkansas case nor a case from any other jurisdiction in which there has been an attempt to impose accomplice criminal responsibility on the basis of supplying an intoxicant to one allegedly responsible as a principal. We have, however, found one case which is close enough to present a helpful, albeit imperfect, analogy, *State* v. *Etzweiler,* 480 A.2d 870 (N.H. 1984).

Etzweiler and Bailey arrived at Etzweiler's place of employment in a car owned by Etzweiler. Bailey was intoxicated, but Etzweiler loaned Bailey his car, and Bailey drove away and caused an accident resulting in two deaths. Etzweiler was charged in two counts of negligent homicide and in two counts as

an accomplice to negligent homicide. The Trial Court certified questions on appeal to the New Hampshire Supreme Court. One of them was "whether the legislature in enacting RSA 630:3, I [negligent homicide], and RSA 626:8 [manslaughter], intended to impose criminal liability upon a person who lends his automobile to an intoxicated driver but does not accompany the driver, when the driver's operation of the borrowed automobile causes death."

The question was answered in the negative. As we have done here, the New Hampshire Supreme Court pointed out the distinction between common law and older accessory statutes and the current New Hampshire accomplice liability statute which is like the Arkansas law. As to charges of negligent homicide against Etzweiler, the Court said:

> If he aided and abetted Bailey, although not present at the commission of the crime, Etzweiler, at common law, may have been guilty as an accessory before the fact to involuntary manslaughter. *See, e.g., Stacy & Rusher* v. *State,* 228 Ark. 260, 306 S.W.2d 852 (1957). However, at common law, the crimes of principals and accessories before the fact were distinct and separate. [Citation omitted.]

> In 1973, the legislature enacted the Criminal Code and created RSA 626:8, the accomplice liability statute. That statute abrogated the common-law distinction between principals and accessories and narrowly defined those situations in which an individual could be held criminally liable for the conduct of another. [Citation omitted.] Etzweiler's conduct, in lending his automobile to Bailey, must be measured against the standards set forth in the statute.

> Etzweiler's conduct *may* fall within the statutory language defining negligent homicide. However, whether to impose criminal liability on Etzweiler involves an important policy decision of broad social consequences. The awesome deliberative task of making such a judgment should not, in the first instance, be thrust upon the juries of our trial courts but should be resolved through the legislative process to determine in what manner society seeks to

deal with the criminal liability of those who permit unqualified operators to wreak havoc upon our public ways. This is a matter for legislative concern and is not a matter for judicial innovation. [Citations omitted.]

The Court then discussed the charges against Etzweiler as an accomplice, quoting RSA:8 III, the New Hampshire accomplice liability statute which is the same as § 5-2-403 quoted above. It was held that to be guilty under the negligent homicide statute, the accused must be unaware of the risk created by his or her conduct; one cannot intentionally aid another in committing an offense of which the latter is unaware.

While the analogy is thus not apt in all respects, we agree with this statement made by the New Hampshire Supreme Court:

Our interpretation of the accomplice liability statute effectuates the policy that an accomplice's liability ought not to extend beyond the criminal purposes that he or she shares. Because accomplice liability holds an individual criminally liable for actions done by another, it is important that the prosecution fall squarely within the statute.

The Trial Court erred in failing to grant Fight's directed verdict motions. The evidence was not sufficient to prove beyond speculation or conjecture that Fight's actions in any way were done "with the purpose of promoting or facilitating the commission" of any of the crimes allegedly committed by Ms. Smith. Nor is there evidence to show that Fight took any action which could be shown to have aided or encouraged Smith to engage in the conduct causing death or in the language of the statute, to have acted "with respect to that result [manslaughter] with the kind of culpability sufficient for the commission of the offense."

As we have done with respect to the question of civil liability of the supplier of an intoxicant to one who causes injury, we point out that it is up to the General Assembly to decide whether to impose criminal responsibility in circumstances where it is shown that the mere supplying of an intoxicant, rather than the consumption or use of it, resulted in criminal misconduct by another.

448

Reversed and dismissed.