# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01101-COA

**NATASHA ORLANTHA STEWART A/K/A NATASHA STEWART A/K/A PEBBELZ DA MODEL**
**APPELLANT**

v.

**STATE OF MISSISSIPPI**
**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/14/2014 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | JARED KEITH TOMLINSON KEVIN DALE CAMP |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF CULPABLE-NEGLIGENCE MANSLAUGHTER, AND SENTENCED TO FIFTEEN YEARS, WITH EIGHT YEARS SUSPENDED AND SEVEN TO SERVE, FOLLOWED BY THREE YEARS OF SUPERVISED PROBATION, WITH CREDIT FOR TIME SERVED, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | REVERSED AND RENDERED - 05/31/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE AND FAIR, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     Natasha Orlantha Stewart was convicted by a jury in the Hinds County Circuit Court

of culpable-negligence manslaughter and conspiracy to commit culpable-negligence

manslaughter. She was sentenced to fifteen years for the crime of manslaughter, with eight years suspended and seven to serve, followed by three years of supervised probation, with credit for time served. She was also sentenced to serve five years for conspiracy to commit manslaughter, followed by three years of supervised probation, with the two sentences running concurrently, all in the custody of the Mississippi Department of Corrections. Stewart filed a motion for a judgment notwithstanding the verdict (JNOV). The motion was granted as to the verdict for conspiracy to commit culpable-negligence manslaughter, and denied as to the culpable-negligence-manslaughter verdict.

¶2. Aggrieved, Stewart appeals arguing: (1) the circuit court erred in denying the JNOV motion for the culpable-negligence-manslaughter conviction; and (2) her conviction is in violation of her right to due process. Finding error, we reverse and render.

## STATEMENT OF FACTS

¶3. Beginning in 2010, Stewart, a self-proclaimed "urban" model, communicated with Karima Gordon via social media. Karima expressed admiration for Stewart's physical appearance, specifically Stewart's enhanced buttocks. Over the course of two years, Karima asked Stewart for information regarding who had helped Stewart enhance her buttocks. Eventually, Stewart invited Karima and Karima's friend, Anglean, who had also shown interest in being an urban model, to a party she was hosting in New York, New York.

¶4. In February 2012, Karima and Anglean attended the party in New York and met Stewart in person for the first time. Following the party, Karima called Stewart to explain that Karima had issues with her appearance because she had not liked the results of a

previous buttocks-enhancement procedure. Once again, Karima asked who Stewart used to perform her buttocks enhancement. Stewart informed Karima that she went to Tracey Garner, who Stewart believed to be a nurse, located in Jackson, Mississippi. Stewart told Karima that Garner performed the type of procedure that Karima desired. On Karima's behalf, Stewart contacted Garner and explained what kind of enhancements Karima desired. According to Stewart, the price for the procedure was $1,500. Stewart put the two in touch by texting Karima's phone number to Garner. Thereafter, Karima paid Stewart $200. Stewart explained that Karima wanted to pay her as a way of thanking her, and considered it a gift. According to Anglean, however, the payment was necessary to procure Garner's information.

¶5.      On March 16, 2012, Karima and Anglean traveled to Jackson from Atlanta, Georgia. Stewart notified Karima and Anglean that she was not able to meet them in Jackson as she originally had planned, but again texted Karima Garner's number. Karima and Anglean called Garner for directions and arrived at a house where Garner administered the injections. Anglean, after arriving at a house and meeting Garner, decided to not move forward with the injections. Karima chose to continue with the procedure, and Garner injected Karima's buttocks with silicone. According to Anglean, the procedure took about two hours. After the procedure, Karima and Anglean drove back to Atlanta. During the drive back to Atlanta, Karima began coughing and having difficulty breathing.

¶6.      When Anglean and Karima reached Atlanta on March 17, 2012, Karima went to the emergency room but did not inform anyone at the hospital that she had received silicone

injections. She was released and given an antibiotic. Karima went back the same day, this time telling the treating physician that she had received silicone injections, but again she was released from the hospital. On March 19, 2012, she returned to the emergency room and was admitted for further treatment. Her condition persisted and treatment proved unsuccessful. Eventually, Karima died on March 24, 2012. Karima's autopsy stated that her death was due to an "adult respiratory distress syndrome with lipoid pulmonary embolization due to massive soft tissue injection with a non-pharmaceutical lipoid substance." At trial, the forensic pathologist who performed the autopsy testified that the fatal substance in question was silicone.

¶7. On November 9, 2012, Stewart was indicted for the felony offenses of murder, wire fraud, conspiracy to commit murder, and conspiracy to commit wire fraud. On February 3, 2014, after a trial, a jury found her guilty of manslaughter and conspiracy to commit manslaughter, and not guilty on the other counts. On February 24, 2014, Stewart timely filed a motion for a JNOV, or for a new trial, arguing that the jury's guilty verdict of manslaughter and the guilty verdict of conspiracy to commit manslaughter were contrary to the law, and the evidence that was presented at trial did not support the verdicts. On July 3, 2014, the circuit court granted the JNOV motion as to the conspiracy verdict but denied the motion as to the manslaughter verdict. Stewart now appeals the denial of the JNOV motion for the manslaughter conviction.

## DISCUSSION

¶8. Stewart contends on appeal that the circuit court erred in denying her JNOV motion

4

with respect to the manslaughter verdict. "A motion for JNOV challenges the legal sufficiency of the evidence." *Stringer v. State*, 131 So. 3d 1182, 1190 (¶32) (Miss. 2014) (citing omitted). Before ruling on a JNOV motion, the circuit court views all credible evidence of the defendant's guilt in the light most favorable to the State. *Id.* If the evidence presented shows "beyond a reasonable doubt that the accused committed the act charged" and that she did so "under such circumstances that every element of the offense existed," then this Court will not disturb the ruling of the circuit court. *Id.* (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)). However, this Court will reverse a judgment when the evidence does not meet this test and is "insufficient to support a conviction." *Id.*

¶9. Stewart complains that the State failed to meet its burden in proving that she committed the act of culpable-negligence manslaughter. Specifically, Stewart argues that the State failed to present sufficient evidence that she entered into an agreement with Garner to inject Karima with silicone, and that Stewart possessed the requisite intent for the commission of the crime. The State proceeded under the theory that Stewart was an accessory before the fact to Karima's death due to Stewart's role in securing Karima's silicone injection, which was performed by a person that Stewart held out to be a nurse, but in fact was not.[1]

¶10. Mississippi Code Annotated section 97-1-3 (Rev. 2014) states that "[e]very person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal ha[s]

---

[1] Garner was a cook at a nursing-home facility and, according to the record, had no medical training.

been previously convicted or not." Mississippi caselaw has also dictated that culpable negligence involves "conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as the result of the willful creation of an unreasonable risk." *Campbell v. State*, 285 So. 2d 891, 893 (Miss. 1973) (citations omitted). Furthermore, "[m]anslaughter may result from the doing of an unlawful act or as the result of gross negligence in the performance of an act otherwise lawful[.] [C]onsequently, one who procures another to use a dangerous agency which causes death may be guilty as accessory before the fact." *Id.* (quoting 26 Am. Jur. *Homicide* § 59, at 199 (1940)). Nevertheless, "[c]ulpable negligence must be ascertained from the facts of each case, and no ironclad statement can be set forth as applicable to all classes of cases." *Shumpert v. State*, 935 So. 2d 962, 967 (¶13) (Miss. 2006) (quoting *Sims v. State*, 149 Miss. 171, 115 So. 217, 219 (1928)).

¶11. After a thorough review of the record, we find that the circuit court erred in denying Stewart's JNOV motion with regard to the manslaughter conviction. At trial, Stewart testified that Garner performed over twenty procedures on Stewart, including several buttocks enhancements. Stewart testified that she never had any health-related issues with any of the procedures Garner performed. Stewart also testified that Garner told her that Garner was a nurse. Stewart believed Garner was a nurse and relayed this information to Karima. Stewart also declared that had she known Garner was not a nurse, she would not have gone to her for the procedures. Nor would she have referred Karima to Garner. Stewart stated that she did not know anyone who died from a buttocks enhancement prior to Karima's

6

death.  According to the record, we also note that Karima herself had a previous buttocks enhancement before going to Garner, and that was clearly not a fatal procedure.

¶12.    As an accessory before the fact, Stewart's actions are inconsistent with putting Stewart on the path of "conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as the result of the willful creation of an unreasonable risk." *Campbell*, 285 So. 2d at 893.  In *Campbell*, a case cited by both parties, at issue was whether the defendant, a joint participant in an illegal automobile race that resulted in the death of a bystander, could be held criminally liable although the defendant did not directly cause the fatal accident. *Id*. at 892.  The Mississippi Supreme Court in *Campbell*  declined to address the issue of the defendant being an accessory before the fact, reasoning that the defendants had jointly engaged in the illegal race, which amounted to criminal negligence. *Id*. at 893. Here, it is undisputed that Stewart did not jointly engage in administering the silicone injections.  In *Campbell,* the victim was not involved in the decision-making process of the defendants who chose to participate in the car race that resulted in a fatality.  In the case at bar, we note that Karima had free will to make a decision to have her buttocks enhanced after the referral.  In other words,  Karima had a choice.  Thus, *Campbell* is not instructive.

¶13.    Mississippi caselaw is minimal involving an accessory before the fact to manslaughter, none of which is dispositive.  As such, we look outside of our jurisdiction for guidance.  In *Fight v. State*, 863 S.W.2d 800, 801(Ark. 1993), Fight and Renee Smith consumed alcohol at Smith's house.  Fight shared a marijuana cigarette with Smith.  They left the house in Smith's pickup truck with Smith driving. Smith drove on a highway past the

7

scene of a burning car and several emergency vehicles. She then turned her truck around and headed back toward the scene. At least one emergency vehicle was parked in the middle of the highway, and hoses were stretched from the emergency vehicle over to the burning car. Instead of driving around the scene, Smith drove between the emergency vehicle and the burning car. Her truck struck two policemen and one fireman, killing one and injuring the other two. Fight and Smith were arrested. Fight was found guilty of manslaughter, leaving the scene of a personal-injury accident, and two counts of aggravated assault on the basis that he contributed to the driver's intoxication by sharing the marijuana cigarette with the driver. Fight's directed-verdict motions were denied.

¶14.    As the Supreme Court of Arkansas explained, "[i]t is obvious that, as Fight did not directly cause the injuries resulting in the charges, his criminal responsibility must be based upon an [accessory before the fact]."[2] *Id.* at 802. The *Fight* court ultimately held:

> The [t]rial [c]ourt erred in failing to grant Fight's directed[-]verdict motions. The evidence was not sufficient to prove beyond speculation or conjecture that Fight's actions in any way were done with the purpose of promoting or facilitating the commission of any of the crimes allegedly committed by Ms. Smith. Nor is there evidence to show that Fight took any action which could be shown to have aided or encouraged Smith to engage in the conduct causing death or in the language of the statute, to have acted with respect to that result . . . with the kind of culpability sufficient for the commission of the offense.

*Id.* at 805 (quotations omitted).

¶15.    We find the *Fight* court's reasoning applicable to the case at bar. Stewart's referral was not made with the purpose of promoting or facilitating the criminal act of manslaughter.

---

[2] Arkansas has codified the concept of accessory before the fact and it is now referred to as an accomplice.

The dissent refers to Stewart aiding in the illegal practice of medicine and/or nursing, but we have already noted that Stewart was not aware that Garner was acting illegally. Also, Stewart did not have reason to speculate that the procedure could cause Karima's death. Finally, the record does not support the contention that Stewart encouraged Garner to perform illegal buttocks enhancements.

¶16. We also point out that a referral does not create a conspiracy, nor is it a criminal act to make a referral. Allowing criminal prosecution for a referral that may lead to undesirable consequences could be considered an enlargement of the application of the statute. Moreover, the fact that Garner performed an illegal service does not render Garner's "patient" a criminal by association.

¶17. We acknowledge that there was a transfer of funds between Stewart and Karima. However, the record does not support the belief that the transaction was part of a bigger scheme or conspiracy involving Garner and Stewart. In fact, the trial court rejected this theory when it granted a JNOV in favor of Stewart on the conspiracy-to-commit-manslaughter conviction.

¶18. Karima's death is a tragic occurrence. The act of injecting a non-pharmaceutical substance into someone under the pretense of being a nurse is no doubt heinous. Garner did this. Stewart's actions, on the other hand, were not a reckless act or done with wanton disregard for human life. As stated earlier, Garner performed the same procedure on Stewart several times. As such, we find that the trial court erred in denying Stewart's motion for a JNOV with regard to the manslaughter conviction.

9

¶19. Stewart also argues that her conviction is in violation of her right to due process. She argues that she cannot be convicted as an accessory before the fact to culpable-negligence manslaughter because it is a novel construction of a criminal statute. We decline to address this issue in light of our finding that the circuit erred in denying the JNOV motion on the manslaughter conviction.

¶20. **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY**.

**LEE, C.J., IRVING, P.J., BARNES, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J.**

**CARLTON, J., DISSENTING:**

¶21. I respectfully dissent. In applying the controlling appellate standard of review to the evidence in this case, I respectfully submit that we must affirm the trial court's judgment and conviction of Stewart for culpable-negligence manslaughter. *See Davis v. State*, 165 So. 3d 537, 541 (¶18) (Miss. Ct. App. 2015). Stewart engaged in unlawful actions that disregarded the probability of fatal consequences to others arising from her creation of an unreasonable risk, and she engaged in conduct that facilitated the commission of culpable-negligence manslaughter as an accessory before the fact.[3]

¶22. The killing of another human being, without legal authority, by the act, procurement, or culpable negligence of another, constitutes the statutory crime of manslaughter in

---

[3] *See Campbell v. State*, 285 So. 2d 891, 893 (Miss. 1973); Miss. Code Ann. § 97-1-3 (Rev. 2014) (defining accessory before the fact).

10

Mississippi. Miss. Code Ann. § 97-3-47 (Rev. 2014).[4] The offense of culpable-negligence manslaughter is established where the evidence shows "the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as the result of the willful creation of an unreasonable risk." *Campbell v. State*, 285 So. 2d 891, 893 (Miss. 1973) (citations omitted).

¶23.    Jurisprudence establishes that, if there is competent evidence to support the jury's verdict, then the verdict must be upheld. *Gandy v. Lane*, 373 So. 2d 1042, 1045 (Miss. 1979). Our standard of review of the sufficiency of the evidence to support the verdict establishes:

> The critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed. If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction. The jury determines the credibility of witnesses and resolves conflicts in the evidence.

*Davis*, 165 So. 3d at 541 (¶18) (quoting *Barron v. State*, 130 So. 3d 531, 536 (¶13) (Miss. Ct. App. 2013)).

¶24.    Within our statutory meaning, culpable negligence constitutes a departure from the conduct of an ordinarily prudent and careful person under the same circumstances so as to furnish an indifference to the consequences. *See Shows v. State*, 175 Miss. 604, 604, 168 So.

---

[4] *See Tait v. State*, 669 So. 2d 85, 90 (Miss. 1996) (holding that the evidence supported culpable-negligence manslaughter); *Gebben v. State*, 108 So. 3d 956, 975 (¶57) (Miss. Ct. App. 2012) ("[C]ulpable negligence is defined as 'the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as a result of the wilful creation of an unreasonable risk thereof.'" (quoting *Chandler v. State*, 946 So. 2d 355, 361 (¶22) (Miss. 2006))).

862, 864 (1936); *Sims v. State*, 149 Miss. 171, 171, 115 So. 217, 219 (1928).  Otherwise stated, culpable-negligence manslaughter is that criminal conduct that evinces "a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of [an] act under the surrounding circumstances[, so] as to render [the] conduct tantamount to willfulness." *Dickerson v. State*, 441 So. 2d 536, 538 (Miss. 1983).

¶25.    At Stewart's trial, the State argued that Stewart was an accessory before the fact to culpable-negligence manslaughter resulting in Karima's death.  Mississippi Code Annotated section 97-1-3 (Rev. 2014) provides that "[e]very person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have been previously convicted or not."  Our caselaw recognizes that "[t]he concept of an accessory before the fact involves some participation in the criminal act." *Evans v. State*, 145 So. 3d 723, 727 (¶19) (Miss. Ct. App. 2014) (quoting *Clemons v. State*, 482 So. 2d 1102, 1105 (Miss. 1985)).  "The Mississippi Supreme Court has affirmed numerous convictions of defendants as accessories 'where the evidence reflected some conduct on the part of the accused which facilitated the consummation of the principal crime.'" *Id.* (quoting *Clemons*, 482 So. 2d at 1105).

¶26.    In the present case, the jury received an accessory-before-the-fact instruction that tracked the language of section 97-1-3.  The jury instruction further stated:

> [A]n accessory before[ the fact] is one who arranges for or counsels or commands another to commit a felony . . . but is not necessarily present himself when the felony is committed. . . . [S]hould you find from the evidence in this case, beyond a reasonable doubt, that on March 16, 2012, . . . Stewart . . . did willfully, unlawfully[,] and feloniously arrange for or counsel or command . . . Garner to inject a silicone substance into the body of . . . Gordon

12

. . . , then it is your sworn duty to find [Stewart] guilty as an accessory before the fact.

¶27.    The record contains evidence from which the jury could have found Stewart guilty as an accessory before the fact.  The evidence before the jury reflected that Stewart entered into an agreement with Garner and Karima to arrange the unlawful administration of silicone injections, and evidence was also presented of Stewart's conduct in arranging for Garner to perform the unlawful medical procedure that resulted in Karima's death by culpable-negligence manslaughter.  As the majority opinion acknowledges, the jury heard evidence that Stewart contacted Garner on Karima's behalf, and the evidence reflected that Stewart explained to Garner the kind of enhancements that Karima sought.  The jury also heard evidence that Stewart referred Karima to Garner by providing Karima's phone number to Garner.  In addition, the evidence showed that Stewart later sent Garner's number to Karima.

¶28.    The State also presented evidence at trial to show that Stewart falsely informed Karima that Garner was a nurse.  The record reflects, however, that Garner was actually a cook at a nursing-home facility with no apparent medical training.  As the record also reflects, the State's evidence at trial further showed that Stewart accepted money, totaling $200, for her participation in the agreement and for arranging the unauthorized medical procedure.  While Stewart claimed Karima gave her the money as a gift, the jury is the finder of fact and determines witness credibility.  *See Price v. State*, 892 So. 2d 294, 297-98 (¶15) (Miss. Ct. App. 2004).

¶29.    In *Campbell*, the supreme court found that the fatal consequences of an unreasonable creation of risk and the creation of a dangerous environment sufficiently established

13

culpable-negligence manslaughter for a driver in an illegal road race that resulted in the death of the other driver in the same illegal race. *Campbell*, 285 So. 2d at 895. In the present case, the State presented evidence to support its argument that Stewart engaged in conduct that facilitated the commission of culpable-negligent manslaughter. The record contains evidence to show Stewart's agreement to engage in unlawful conduct, to create a dangerous environment, and to commit various actions that facilitated the commission of culpable-negligent manslaughter. Furthermore, the State's evidence showed that Stewart's conduct created an unreasonable risk in disregard of human life and of the consequences of her actions. As our precedent recognizes, the unauthorized practice of medicine is unlawful in Mississippi, and the supreme court has found that the State's regulation of the practice of medicine constitutes a legal exercise of police power. *See Harris v. State*, 229 Miss. 755, 768-69, 92 So. 2d 217, 223 (1957).[5]

¶30. The record in this case contains sufficient evidence for a jury to find Stewart guilty as an accessory before the fact and, thus, guilty of culpable-negligent manslaughter. In summary, the evidence before the jury included Stewart's agreement to arrange the illegal injection procedure by a cook and her conduct of actually procuring and arranging the unauthorized silicone injections. The evidence in the record also included Stewart's receipt of money for her willful conduct of agreeing to arrange and to facilitate the unreasonably dangerous procedure that resulted in Karima's death by culpable-negligence manslaughter.

---

[5] *See also* Miss. Code Ann. § 73-15-5 (Rev. 2012) (defining the "practice of nursing" and other related terms); Miss. Code Ann. § 73-25-33 (Rev. 2012) (defining the practice of medicine in Mississippi).

Clearly, in viewing the evidence in the light most favorable to the State, sufficient evidence was admitted at trial from which the jury could find Stewart guilty beyond a reasonable doubt of the essential elements of acting as an accessory before the fact and, thus, guilty beyond a reasonable doubt of the essential elements of culpable-negligent manslaughter. *See Davis*, 165 So. 3d at 541 (¶18). The evidence the State presented at trial clearly showed that Stewart's conduct created an unreasonable risk and evinced a reckless disregard for the probabilities of injury and fatal consequences arising from her actions. As a result, I would affirm Stewart's conviction for culpable-negligence manslaughter. I therefore respectfully dissent from the majority's opinion.

**GRIFFIS, P.J., JOINS THIS OPINION.**